98    165
f117    81

KENNEDY v. MONTGOMERY COUNTY

AND

MUNFORD v. MONTGOMERY COUNTY.

(*Nashville.*    February 3, 1897.)

1. TAXATION.    *Unauthorized levy by county.*

The authority to levy and collect a special railroad tax to pay a specific debt and to divert such surplus of said tax as may remain at the end of each year, after meeting all demands on this particular account, to the extinguishment of any just debt against the county, does not justify the intentional levy and collection of a larger railroad tax than is necessary to meet the yearly demands of the railroad liability in order to raise a surplus for other purposes, but simply authorizes the application to general purposes of such accidental and unavoidable surplus of the railroad tax levied in good faith as may remain at the end of each year.    (*Post, pp. 177, 178, 180.*)

Acts construed: Acts 1893, Ch. 179.

2. CONSTITUTIONAL LAW.    *Title and subject of statute.*

The body of a statute is broader than its title, and the statute is unconstitutional and void when under the title "An Act authorizing the application of the railroad fund of Montgomery County to other purposes after the debt is paid" it is enacted that an annual appropriation and diversion of the surplus of the county railroad fund may be made.    (*Post, pp. 178, 179.*)

Constitution construed: Art II., § 17.

Act construed: Acts 1893, Ch. 179.

3. INJUNCTION.    *Against collection of tax denied.*

Taxpayers cannot maintain, on behalf of themselves and other taxpayers, a bill to enjoin the collection of a railroad tax by a county, although the tax is illegal as being in excess of the amount required for the particular purpose, where they have

delayed to bring suit for a whole year, and until the greater part of the tax had been collected. (*Post, p. 181.*)

4. SAME.    *To prevent misappropriation of special county funds.*

Taxpayers may maintain an action to enjoin any misappropriation of railroad funds in the hands of the county officials, or which may come into their hands thereafter, to the payment of other debts than the railroad debt, for which they were raised, until that is wholly extinguished, where such misappropriation is threatened under an illegal provision of an Act authorizing the application of any surplus remaining at the end of the year to the credit of the railroad fund after payment of accrued interest and past due bonds against the county. (*Post, pp. 181, 182.*)

5. COUNTY FUNDS.    *Application of.*

"The taxpayers of every county have the right to know for what purpose they are being taxed, and also to know that taxes collected from them for any specific purpose are applied to such purpose, and not to some other, at the discretion of county officials, and according to their ideas of public policy or expediency.    The law does not provide for the mixing of special and ordinary funds, nor the supplementing of one by the other by county officials, . . . but the law lays down the rule of action for county officials, as well as all others, and from it they cannot depart.    When the people consent to be taxed for any purpose they cannot complain, but when they are taxed for one purpose and the fund applied to another, and when they are misled as to the purposes for which they are being taxed, they have a right not only to complain, but a remedy to redress the grievance, if they apply to the Courts in the proper way and at the proper time." (*Post, pp. 179, 180.*)

---

FROM MONTGOMERY.

---

First case, appeal from Chancery Court of Montgomery County.    THOS. H. MALONE, Ch., sitting by interchange.

Kennedy and Munford *v.* Montgomery County.

Second case, appeal in error from Circuit Court of Montgomery County. J. W. Bonner, J., sitting by interchange.

W. M. Daniel and John F. House for Kennedy.

John F. House, H. C. Merritt, and W. M. Daniel, for Munford.

Leech & Savage and R. H. Burney for Montgomery County and Rice.

Wilkes, J. The first of the above named causes is an injunction bill in the Chancery Court of Montgomery County, by a number of citizens of the county, against the county and its revenue and fiscal agents, to enjoin the collection of a special tax assessed for railroad purposes, for the year 1894. A temporary injunction was granted, but afterwards dissolved on answer. The bill was demurred to, the demurrer sustained, and bill dismissed, and the complainants appealed, and have assigned errors.

The other case, of *Munford* v. *Rice et als.*, comes from the Circuit Court of Montgomery County, and is a petition for certiorari and to supersede a levy made for the purpose of collecting such railroad tax from the plaintiff, Munford. This petition was dismissed upon motion, and the supersedeas discharged, and the plaintiff has appealed and assigned errors. It is agreed that the two cases present the same legal questions, and that they may be heard together in this Court.

The facts made out by the bill and petition are, that, in 1853, Montgomery County subscribed two hundred and fifty thousand dollars to the Memphis, Clarksville & Louisville Railroad. The General Assembly of the State, by an Act passed March 2, 1854, provided that the county might issue its bonds for two hundred and fifty thousand dollars, having thirty years to run to maturity, with annual interest coupons attached, and that any dividends from the stock should be applied to the interest on such bonds and to create a sinking fund to retire the bonds on final maturity, and, in the event such dividends were not sufficient, the County Court was directed to levy a railroad tax, in the manner prescribed by the Act of January 22, 1852, such tax, when collected, to be applied to the interest and to raise a sinking fund to take up the bonds at maturity. The stock was subscribed. The bonds were issued. No dividends have ever been received upon the stock, and the County Court, year after year, with the exception of the period covered by the war, proceeded to levy a railroad tax under the provisions of the law. It is further alleged that the County Judge of Montgomery County, who, by virtue of his office, is the financial agent of the county, has applied large amounts of such railroad taxes to other debts, without authority and in violation of law; that this misapplication had gone to such an extent that, in the year 1890, one H. C. Merritt, a taxpayer of Montgomery County, filed a bill against him to en-

join such misapplication.   That  cause  came  by  ap-
peal to the Supreme Court, when he was perpetually
enjoined from applying funds arising from the rail-
road  tax  to  any  other  purpose  than  the  payment
of  the  railroad  debt.   A  copy  of  the  decree  of
this  Court,  to  that  effect,  of  date  March  7,  1891,
is  made  an  exhibit  to  and  a. part  of  the  bill.

The  bill  further  states,  that  at  the  next  session
of  the  General  Assembly  of  Tennessee,  to  wit,  in
1893,  an  Act  was  procured  to  be  passed  to  avoid
the  force  of  this  decree.

It  further  recites,  that  when  the  bonds  matured
in  1886,  there  remained  of  them,  outstanding,  the
sum  of  $134,500.    Under  an  Act  passed  by  the
Legislature  they  were  funded  into  new  bonds,  with
the  privilege  on  the  part  of  the  county  of  calling
them  in  and  paying  them  at  any  time; .and  all  but
about  $15,000  of  said  bonds  have  been  paid  off  and
retired.    The  bill  charges  that  the  taxpayers  of  the
county,  under  the  levy  of  1893,  have  some  thousands
of  dollars  more  than  sufficient  to  pay  off  and  dis-
charge  the  last  remaining  bond;  but,  while  this  is  so,
the  County  Court  of  Montgomery  County,  at  its
April  term,  1894,  levied  upon  the  people  of  the
county  a  railroad  tax  of  thirty-five  cents  on  the
hundred  dollars  of  property,  without  any  authority
whatever  in  law;  that  a  majority  of  the  taxpayers
of  the  county,  in  ignorance  of  these  facts,  paid  the
taxes  illegally  levied  for  1894;  and  others  have  been
forced  to  pay  privilege  taxes  upon  pain  of  closing

their business; and others have been induced to pay by the assurances of the County Judge that he would repay the same in the event the tax should be held illegal, but out of what fund they are not advised; that the County Judge had in his hands, of railroad tax, under the levy of 1893 and previous years, at the October term, 1894, of the County Court, the sum of $24,405.52, and that he still had said sum when the bill was filed—more than sufficient to pay off the outstanding bonds in full. Copies of the financial reports of the County Judge to the Quarterly Court, from April, 1886, to October, 1894, are filed and made parts of the bill. It further states that in a few days the tax books would be put into the hands of constables to collect, by law, the taxes remaining unpaid, and, if necessary for that purpose, to sell the property of the complainants and other delinquent taxpayers; that the Trustee had been directed not to receive any other taxes unless the taxpayer would at the same time pay the railroad tax, and the County Judge had filed a bill enjoining the Trustee from collecting other county taxes from the taxpayer unless such taxpayer would at the same time pay the railroad tax. That bill is also made an exhibit to and part of this bill, but the same was dismissed before an answer was filed. The bill further states that one Roth paid his railroad tax for 1894 under protest, and sued to recover the same, and in such suit the railroad tax was declared to be without authority, null, and void;

and this judgment was not appealed from by the county officials. The bill further alleges that the courthouse of Montgomery County was injured by fire, and the repairs, amounting to many thousands of dollars, were paid out of the railroad fund by the County Judge, on the order of the County Court, and a copy of this order is made part of the bill; that the County Judge claims the right to divert such railroad fund, under the Act of 1893, before referred to, when necessary for county revenue purposes. The bill charges that this Act is unconstitutional because of a defective title, and want of conformity of the title and caption with the provisions in the body of the Act; the title being: "An Act authorizing the application of the railroad fund of Montgomery County to other purposes after the debt is paid." It is insisted that this means that after the whole railroad debt is discharged, consisting of all the bonds and coupons, any small surplus that may remain from an overlevy may be applied to other purposes. While the body of the Act provides that "hereafter, in Montgomery County, if there remains a surplus at the end of the year to the credit of the railroad fund of the county, after all accrued interest, and all bonds past due, or that may have been called in or paid, this surplus may be applied to the extinguishment of any just debt against the county," etc. See Acts of 1893, p. 370.

The insistence is that by the title or caption of the Act it was intended to dispose of any necessary

or accidental surplus remaining of the railroad tax levy upon a final winding up and payment of the railroad debt, and not to sanction the application of a part of such levy, year by year, to other purposes, and not to sanction the application of the railroad tax yearly in order to supplement the county revenue.

The prayer of the bill is to enjoin the collection of any more of the taxes levied for the year 1894 for railroad purposes, and the diverting of any part of such railroad tax funds to any other purpose than the railroad debt, and that the County Judge be directed to apply the railroad money in his hands to the extinguishment of the railroad debt, and the bill is filed for themselves and all other taxpayers. General relief is also prayed.

C. W. Tyler, County Judge, demurred to the bill, stating as grounds of demurrer (1) that complainants had waited too long to file their bill, and that to sustain it would confuse and embarrass the administration of the finances of the county; (2) that complainants have no right to enjoin the application by the county of the money collected on the levy for 1894 and now in its treasury for county purposes; (3) that complainants cannot maintain the suit in behalf of themselves and other taxpayers, who had not paid their taxes. He also filed an answer giving in detail a history of the county's finances. This latter was no doubt filed to dissolve the injunction, and because the County Judge desired to

make an exhibit of his acts as the financial agent of the county. .

The county also files its demurrer and answer through C. W. Tyler, Judge, setting up the same matters as contained in the demurrer and answer of the County Judge. The motion to dissolve the injunction was heard before the Hon. Thomas H. Malone, Chancellor, and by him the injunction was dissolved, he filing a written opinion as the basis of his action. The demurrer was heard by the Hon. J. W. Bonner and sustained, and the bill was dismissed.

Chancellor Malone was of opinion the Act of 1893, Ch. 179, was not unconstitutional, and that while the subject of the Act was unhappily expressed, yet there was not such incongruity between the title and Act that the subject of the Act was not expressed in the title. He was also of opinion that the bill came too late, inasmuch as the majority of the taxpayers had paid their taxes for 1894. He further expressed the opinion that each individual taxpayer had a remedy at law to restrain collection of his own tax.

Thereupon A. H. Munford filed his petition to supersede the collection of his individual railroad tax for 1894, which, as before stated, was dismissed and the supersedeas discharged by Hon. J. W. Bonner, sitting by interchange. The bill in this case was filed April 1, 1895. The tax levy for 1894, which was sought to be enjoined, was ordered on

April 1, 1894, or, one year after the tax was ordered to be levied, the bill was filed.

Referring to the report of the County Judge, made part of the bill, it appears that since 1886 there has been an average of about $2,500 of railroad tax fund applied yearly to county purposes indiscriminately, making a total of about $20,000 thus appropriated during the eight years. It also appears that there was on hand, of railroad funds, on April 1, 1894, the sum of $30,347.87. While, of course, the matter must, in the present shape of the pleadings, be decided primarily upon the allegations of the bill, which, upon demurrer, are taken as true, still we refer to the statements made in the answer filed by the County Judge in order to illustrate more fully the manner in which the funds have been managed. It appears from this answer that a large debt had accumulated prior to 1873, and heavy expenditures were made for courthouse, jail, and other purposes in Montgomery County until its liabilities, including the railroad debt, reached the sum of $475,000; that the courthouse and jail were built almost wholly out of railroad funds. The cost of these improvements is stated to have been $128,-392.74.

Since the refunding of the bonds the railroad funds have been appropriated, the answer states, to only three purposes outside of the railroad debt, to wit: the purchase of a courthouse lot, the payment of judgments rendered against the county by the

Supreme Court, and part payment of a bridge across
Red River. These amounts were paid out of the
railroad fund, as stated in the answer, because the
ordinary county revenue was not sufficient for that
purpose. It is stated also that the payments on the
courthouse lot and judgments referred to are the
same matters complained of in the suit heretofore
alluded to as enjoining the county from diverting
the railroad funds. It appears also that a portion
of the railroad, as well as county fund, was lost
by the failure of the Franklin Bank at Clarksville.
The Judge of the County Court, when this failure
occurred, in order to protect the credit of the
county, arranged with the First National Bank at
Clarksville to pay all county warrants presented, and
not to charge any interest on overchecks; and, in
consideration therefor, he agreed to keep on deposit
in said bank, to make the account of the county a
safe and desirable one to the bank, a sufficiency of
the railroad fund, which should always stand pledged
to make up any deficiency in the revenue account;
and he further agreed to transfer, at any time de-
manded, enough of railroad fund to county fund to
make the latter account good. This arrangement
continued from December 10, 1891, to September 1,
1894. The county revenue ran behind for the years
1892 and 1893, and the County Judge thereupon,
as he states, procured the passage of the Act of
1893, before referred to, in order to use the surplus
railroad fund each year as part of the county rev-

enue, rather than increase the rate of taxation for county purposes.

After the passage of this Act, the County Judge paid towards the. construction of Red River bridge $3,790.04, out of railroad funds. There remained on hand April 1, 1894, of railroad fund, $30,347.87, and the bonded or railroad debt was then about $36,000. There was afterwards paid in of 'delayed railroad taxes which were in officers' hands on April 1, 1894, the sum of $8,831.83, which was collected up to August 20, 1894. There was to the credit of county revenue on April 1, 1894, $1,570.92, but there was a large amount of county warrants outstanding. Additional expenditures were also contemplated in the way of repairs upon the courthouse, estimated at $6,000 to $7,000, and a large sum required for contemplated highway improvements, the amount not stated, and a bridge to cost $4,000. It was necessary, therefore, as the answer states, to keep up the railroad taxes for 1894 or largely increase the rate of taxation for county purposes; or suffer the debts of the county to accumulate and its credit to be impaired.

It appears that when the County Judge filed his answer in this cause, April 15, 1895, there was in the county treasury of railroad fund $38,289, of which $22,323.28 arose out of the levy of 1894, and the county revenue account was overchecked $1,040.62, with about $7,000 of outstanding county indebtedness, and $16,000 of outstanding bonds, and estimated re-

ceipts for revenue purposes for the balance of the year of $7,500, with estimated expenses $16,000. The total shows liabilities for the year 1895, $40,-000, outside of any bridge or special account, and if the railroad tax of 1894 could not be used, the county, at the end of the year, would be in debt $20,000, but, if used, the county would have a surplus of some $8,000 to $10,000.

The answer further states that about eighty per cent. of the railroad tax had been paid before complainants filed their bill, leaving about $8,000 of the tax unpaid, and $32,000 of it already paid in. It appears, also, that the tax levy for 1895, for county purposes, was twenty cents on the $100. It appears, also, that some $5,561.87 has been paid into the railroad fund from the sale of an old courthouse lot, which was all that was paid into the railroad fund from any source except railroad taxes. The balance of railroad debt is not due, but is subject to call. The theory of the County Judge appears to be that so much funds was necessary to pay the current and extraordinary expenses, including the railroad debt, and it was not material how the fund was raised, whether by a railroad tax levy or an ordinary levy for county purposes, and that if the railroad tax levy was reduced, the county rate must have been increased, and that under the ~Act of 1893 he had the right to use the surplus of railroad tax to supplement the county revenue, and so to handle and

control the railroad taxes and funds as to protect the general credit of the county.

We are of opinion that this theory is entirely incorrect, and wholly wrong. The statutes contemplate that the railroad tax should be levied only for railroad debt purposes, and should be applied to such purposes only. It was never the intention of the Act of 1893, under its most favorable construction, to authorize the levy of any more railroad tax yearly than was necessary to pay the railroad debt yearly, and it was not the purpose of the Act to supplement the county revenues by making an excessive railroad tax levy, nor to produce a surplus for ordinary county purposes or any other purpose than the payment of the railroad debt. Putting the most liberal construction upon the Acts of 1893 favorable to the county, it could go no further than to authorize such accidental or unavoidable surplus as arose each year to be applied to county purposes, but did not contemplate that the levy should be made so large as to raise such surplus, but only to such a point as would reasonably suffice for railroad and no other purposes.

We are also of opinion that, by the caption of the Act, the General Assembly was led to believe that it was only designed to dispose of such accidental and unavoidable surplus as might arise upon the final settlement and adjustment of the railroad debt—or, as the Act expresses it, after the debt is paid. The provisions of the body of the Act went

beyond the scope of the caption, in providing for the appropriation of a yearly surplus, which the General Assembly cannot be deemed to have intended, since it would have been contrary to the general rule adopted in regard to such funds, and contrary to the holding of this Court in the Merritt case, which announced the general rule. We are of opinion that the use of the railroad tax fund for any other purpose than the railroad debt, so long as it existed, was unauthorized and illegal, and that it was illegal and unauthorized to levy taxes for railroad · purposes which were to be appropriated to and used for county purposes; that county revenue should have been provided by a tax rate sufficient to meet the necessities of the county, and that it could not be supplied or supplemented by levying a tax under the guise of railroad tax, but really intended and used for county purposes. The tax-payers of every county have the right to know for what purpose they are being taxed, and also to know that taxes collected from them for any specific purpose are applied to such purpose, and not to some other, at the discretion of county officials, and according to their ideas of public policy or expediency.

The law does not provide for the mixing of special and ordinary funds, nor the supplementing of one by the other by county officials. In this case the officials say that they were actuated by the best of motives—the desire to keep the credit of the county

unimpaired and to make the burden of taxation appear as light as possible—but the law lays down the rule of action for county officials, as well as all others, and from it they cannot depart. When the people consent to be taxed for any purpose they cannot complain, but when they are taxed for one purpose and the fund applied to another, and when they are misled as to the purposes for which they are being taxed, they have a right not only to complain, but a remedy to redress the grievance, if they apply to the Courts in the proper way and at the proper time.

If the Act of 1893 could be held to be free from constitutional objections, still it cannot be so construed and executed as to warrant an excessive railroad tax each year, in order to raise a surplus each year, nor to justify the yearly diversion of railroad funds to county purposes, but, at most, only to dispose of such minor accidental and unavoidable surplus remaining upon a proper levy for railroad purposes alone. We are, however, of opinion that the body of the Act, so far as it provides for an annual appropriation and diversion of surplus, is not warranted by nor germane to the purpose of the Act as expressed in its caption, which clearly contemplates only the disposition of such surplus as necessarily remains after the railroad debt is finally paid, and the Act is unconstitutional and void.

We are of opinion from the allegations of the bill and the statements in the answer that sufficient rail-

road fund had been provided by taxation to pay off the railroad debt before the taxes of 1894 were laid or levied, and that any levy for that year for railroad purposes was unauthorized and unwarranted. We are of opinion, however, that complainants must be denied any relief against the collection of this tax for 1894, because of their delay in filing their bill to resist it, and, in view of the fact that the greater part of the tax was collected before they filed such bill, it cannot be maintained for such purpose on behalf of themselves and other taxpayers. 2 Pom. Equity Jurisprudence, Sec. 817: *Chamberlin et al.* v. *Linborough*, 14 Atl. Rep., 865; *Calhoun* v. *Delphi & M. R. R. Co.*, 24 N. E. Rep., 27; *Parson* v. *City of Hampton*, 28 N. E. Rep., 350; *North* v. *Platt Co.*, 45 N. W. Rep., 692.

To this extent the decree of the Court below is sustained. The complainants, however, when this bill was filed, had the right to enjoin any threatened misappropriation of the railroad funds then in the hands of the county officials, or to come into their hands thereafter, to the payment of any other debts than the railroad debt until that was wholly extinguished, and the bill should have been sustained for that purpose, and the injunction to that extent maintained; and to that extent the decree of the Court below is reversed.

Inasmuch as the county of Montgomery and the County Judge have answered the bill giving in detail all the facts necessary to the adjudication of the ques-

tion involved, and inasmuch as we are clearly of opinion that under the facts stated in the answer the complainants were and are entitled to have relief from the further diversion of the railroad funds to any other purpose than the railroad debt until it is extinguished, the chancery cause will not be remanded, but decree will be entered here enjoining the county of Montgomery, and its County Judge and other fiscal agents, from applying any more railroad funds to other purposes than railroad debts, until it is wholly extinguished, and the temporary injunction granted in the Court below will be made perpetual.

The county of Montgomery will pay all the costs in this Court and of the Court below of the chancery cause. The judgment of the Circuit Court upon the petition of Munford will be reversed, and that cause remanded to the Court below for such further proceedings as may be necessary. The county will also pay the costs of appeal in that case.