State, ex rel., v. Pollard.

STATE OF TENNESSEE, *ex rel.* DAVIDSON COUNTY BOARD OF
EDUCATION *et al.* v. W. M. POLLARD, County Judge.

(*Nashville.*   December Term, 1910.)

1. **PUBLIC SCHOOLS.   County court cannot legally appropriate
   general county funds for construction and repair of public
   school buildings.**

The county court has no power to make an appropriation cut of
the general county funds for special county purposes, and
cannot legally appropriate any part of the fund for general
county purposes to the special purpose of maintaining the pub-
lic schools, in the erection of school buildings and the repair
and improvement of existing buildings; for, while the main-
tenance of public schools in the county is a county purpose,
it is not, under our statutes, a general county purpose but a
special county purpose.   (*Post, pp.* 129-137.)

Code cited and construed:   Secs. 1395, 6045, subsec. 11  (S.);
secs. 1167, 4987, subsec. 11 (M. & V.) ; sec. 4215, subsec. 12 (T. &
S. and 1858).

Acts cited and construed:   Acts 1809, ch. 81; Acts 1907, ch. 236,
sec. 8, subsec. 1, sec. 10, subsec. 2; ch. 447; ch. 537; Acts
1909, ch. 264, sec. 2; ch. 479, secs. 1 and 2.

Cases cited and approved:   Kennedy v. Montgomery Co., 98
Tenn., 179; Railroad v. Hamblen Co., 115 Tenn., 526; State v.
True, 116 Tenn., 294.

2. **SAME.   Mandamus will not lie to compel county judge to issue
   county warrant for school purposes to be paid out of general
   county funds attempted to be appropriated by quarterly county
   court for school purposes.**

The county judge cannot be compelled by *mandamus* to issue
a county warrant for the payment of indebtedness contracted
for the erection and repair of public school buildings, to be

State, ex rel., v. Pollard.

paid out of the general county funds attempted to be appropriated by the quarterly county court for that purpose. (*Post*, *p.* 129-137.)

See citations under the preceding headnote.

3. SAME. Statute authorizing appropriations for erection and repair of courthouses, jails, and "other county buildings" does not include public schoolhouses; rule of construction.

The statute (Shannon's Code, sec. 6045, subsec. 11) empowering the quarterly county court to appropriate money for building, repairing, and taking care of courthouses, jails, and other county · buildings, does not include schoolhouses and buildings used for school purposes; for the words "other county buildings," as so used, under the rule of *ejusdem generis*, mean county buildings of the same nature and kind as courthouses and jails. (*Post, pp.* 130, 138-139.)

Code cited and construed: Sec. 6045, subsec. 11 (S.); sec. 4987, subsec. 11 (M. & V.); sec. 4215, subsec. 12 (T. & S. and 1858).

Acts cited and construed: Acts 1809, ch. 81.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—THOS. E. MATTHEWS, Judge.

JNO. T. LELLYETT, for plaintiff.

SAMUEL N. HARWOOD, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The county court of Davidson county passed a resolution appropriating out of its general funds $20,000 for school purposes. Directions were made in this order as to how this money was to be applied. Part of it was to be used for the erection of school buildings, and part of it for repairing and improving old ones.

In pursuance of this action of the county court, and upon the faith thereof, the Davidson county board of education entered into a contract with a certain firm to perform some of the work provided for in the resolution mentioned.

Later, the board requested the county judge of Davidson county to pay these contractors for their work. The county judge refused to do so. This petition was then filed, seeking a *mandamus* to require the county judge to issue his warrant for the payment of this indebtedness. The petition was filed on the relation of the Davidson county board of education, the contractors, and a certain citizen residing in the school district where the work was done.

The county judge demurred to this petition. The question raised by the demurrer was whether the county court of Davidson county had the power to make an appropriation out of the general county funds for school purposes. The circuit judge was of opinion that the county court had no authority thus to use a general fund for a special purpose. He, therefore, sustained the de-

124 Tenn.—9

murrer. The court of civil appeals affirmed the action of the trial judge.

We are of opinion that the action of the lower courts was correct, and we denied a petition for a writ of *certiorari* at a former day of the term.

As the question is one of importance, and the opinion of the court of civil appeals on the subject is forcible and timely, this court adopts for publication a portion of the opinion of that court, delivered by Judge Hughes.

After stating the fact of the case, Judge Hughes said:

"The argument presented on behalf of petitioners is that the maintaining of public schools, including the building and repairing of public schoolhouses, is a county purpose, and, being a county purpose, the county can make appropriations from its general funds to be applied for those purposes. Shannon's Code, section 6045, subsec. 11, is specially relied on. The section and subsection referred to are as follows:

" 'The county court may appropriate moneys as follows: . . . (11) For building, repairing, and taking care of courthouses, jails, and other county buildings.'

"On the other hand, it is said by counsel representing defendant that while the maintaining of schools, including the building and repairing of schoolhouses, is a county purpose, that county purposes are of two kinds, general county purposes and special county purposes, and that moneys raised by taxation for special county purposes cannot be used for a general county purpose, and that money raised for general county purposes can-

not be used for a special county purpose. The contention is that the fund from which the county court attempted to make the appropriation in question was a fund for a general county purpose, and that the matter of building and repairing schoolhouses, being a special county purpose, the fund in question could not be appropriated and used for that purpose. We are of opinion the contention made by defendant is correct.

"That the division of county purposes into the two classes, of general purposes and special purposes, is recognized in our statute and the decision of our supreme court, is beyond question. To illustrate this: As to our statutes, it is not necessary to go beyond a statute directly involved in the determination of the exact question here at issue. Acts 1909, ch. 479, p. 1726, is the general revenue law in force at the time of the action of the county court of Davidson county now in question, and at the time the suit was brought. The first section of that act has this provision:

" 'Be it enacted by the general assembly of the State of Tennessee, that the taxes on every $100 worth of property shall be fifty cents for the year 1909 and for every subsequent year thereafter, thirty-five cents of which shall be for State purposes and fifteen cents for school purposes.'

"The second section of that act has this provision:

" 'Be it further enacted, that the several county courts of this State be and they are hereby authorized and empowered to levy an annual county tax on every $100

worth of taxable property not exceeding thirty cents upon the $100 worth of property, and exclusive of the tax for public roads and pikes and schools and interest on county debts and other special purposes.'

"So, in the very face of the act authorizing the levy of taxes which was in force at the time the county court passed the resolution in question, revenue for 'school purposes' is provided for in the rate of taxation fixed for the State, and in the provisions for levies by the counties a distinction is made between a 'county tax' and a tax 'for schools;' the levy for schools being classed with 'other special purposes,' thus placing in direct terms the tax 'for schools' among taxes for special purposes. Also by Acts 1909, ch. 264, p. 907, provision is made for a 'general education fund,' and by section 2 of that act sixty-one per cent. of this fund is directed to be apportioned to the several counties of the State according to the scholastic population. And by Acts 1907, ch. 537, p. 1789, a further provision is made for paying out of the State treasury certain moneys into the 'public school fund,' to be disbursed among the various counties in the manner therein provided. Statutes providing for the disbursement of school funds have in like manner recognized them as special. Take as an illustration Acts 1907, ch. 236, p. 845, creating a county board of education for the various counties of the State. That act gives the power to control and supervise the erection and repairing of school buildings to the county board of education, and by section 10, subsec. 2, the county board is

given power to control the expenditure of the 'public school fund,' and the manner of drawing warrants on that fund is expressly provided for by section 8, subsec. 1. And by Acts 1907, ch. 447, p. 1504, a county school board is created for Davidson county, and this board in like manner is given power to control the building and repairing of school buildings, and the power to draw warrants on the public school fund, and in a general way such powers as are conferred on the ordinary county board of education. On the other hand, under other statutory provisions not necessary to here point out, the fund derived from taxation for ordinary county purposes is paid out on the order or warrant of the county judge. For years such differences in the manner of disbursing the two funds has existed in Tennessee.

"This same recognition of the public school funds of the State as a separate and distinct fund is found in the decisions of our supreme court. There is no better illustration than in the case of *State* v. *True,* 116 Tenn., 294, 95 S. W., 1028. The whole case recognizes this, but special attention is called to the following language found on page 309 of 116 Tenn., and page 1031 of 95 S. W.:

" 'The public school funds in the hands of the trustees of counties are not the property of the counties, and their authorized agents have no control over them. The school fund does not go into the county treasury. It cannot be appropriated by the county authorities to any purpose, and it is not subject to the warrant of the chair-

man of the county court. The trustee is required to keep it, from whatever source it may be derived, separate and apart from all other county funds in his hands, and it is made a high misdemeanor for him to use or appropriate it to other or county purposes. Code, section 1167; Shannon's Code, section 1395. He cannot dispose and distribute it for other purposes than the maintenance of the public schools of the county, and only for this purpose in the manner pointed out by special statute.'

"The various statutes and decisions are referred to for the purpose of indicating that under the laws in force in Tennessee our public school system is a complete one in itself, and the public school funds are recognized as distinct from ordinary public funds. In fact, the manner of creating the school fund and of handling it is hedged about by more machinery and with more care and protection than any other public fund, and above all deserves to be classed as a special fund.

"The ultimate inquiry, then, is as to the power of the county courts to take funds belonging to one, the general fund, and use them for the special purposes for which school funds are created. In the case of *Railroad* v. *Hamblen County*, 115 Tenn., 526, 92 S. W., 238, the following language is used:

" 'We think that an order of the county court levying a special tax should state the purpose for which the levy is made. This is necessary to enable the taxpayers to challenge it, if it be for a purpose not authorized by law, and if authorized to compel the application of the tax *to*

*the purpose for which it was in fact levied, if a diversion* to some other object is attempted. . . .

" 'The object of the tax should be evidenced by some record to which the people can resort for information. Without such record the taxpayers are substantially de- prived of their right to know the purpose for which they are taxed, *and to have the taxes paid by them applied to the purpose for which they have consented to be taxed.'*

"The court in the same case quoted with approval the language of Judge Wilkes in the case of *Kennedy* v. *Montgomery County,* 98 Tenn., 179, 38 S. W., 1079, to the following effect:

" 'The taxpayers of every county have a right to know for what purpose they are being taxed, and also to know that taxes collected from them for any special purpose are applied to such purpose, and not to some other, at the discretion of county officials, and according to their ideas of public policy or expediency. *The law does not provide for the mixing of special and ordinary funds, nor the supplementing of one by the other by county officials.'*

"The case last referred to involved directly the matter of collecting moneys for one purpose and using them for another, and the court there held that such could not be done, and used the language above quoted,

"In the case of *State* v. *True,* 116 Tenn., 311, 95 S. W., 1032, already herein quoted from, the following further language is used with special reference to public school funds:

" 'The county court, whether quorum or quarterly, has only such powers and jurisdiction as are vested in it by statute, and when the power or jurisdiction exercised by it is called in question, the party relying upon the action of the court must be able to point out the statute conferring the jurisdiction.' See, also, Shannon's Code, section 6046.

"Authorities might be greatly multiplied to the same effect of those just referred to; but these, we think, are sufficient to show that it is beyond the power of county courts of this State to take moneys raised for school purposes and appropriate them for other different purposes, or to take moneys raised for purposes other than school purposes and use them for school purposes.

"This holding does not mean that that portion of the population of the counties of the State interested especially in the public schools and public school buildings are without remedy. All the law requires is that each fund be kept separate and used for the purpose for which it was collected. The law is simple in its provisions for the raising of funds to run the schools, and all that is required in that regard is that the particular means provided by statutes be pursued. The slipshod method of using just any fund that might be on hand and available for just any purpose that might arise is not authorized by law and cannot be sanctioned by the courts. Such methods lead but to ultimate confusion, if not more serious trouble, and should be discouraged in

every department of government, State, county, and municipal.

"It is proper to say that we do not think that section 6045, subsec. 11, of Shannon's Code, can have the effect contended for by appellants. That section of our Code originated with Acts 1809, ch. 81, and is found in 1 Scott's Revisal of the Laws of Tennessee, p. 1180, and as there found, it will be seen that its original provisions were for the building and repairing of courthouses, prisons, and stocks; and this, we think, would be sufficient to show that its object was not to extend to buildings of the character contended for in this case. We also think that, aside from this consideration, the words 'courthouses, jails, and other county buildings,' all used in the same sentence and in the same connection, would indicate an intention to confine the 'other county buildings' to buildings of the same character as those mentioned—courthouses and jails. The rule of construction applicable to this matter has been expressed in the following language:

" 'It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to

have been used, not in the broad sense which they might bear in standing alone, but as related to the words of more definite and particular meaning with which they are associated. The general rule is supported by numerous cases.' Lewis' Sutherland, Statutory Construction (2d Ed.), vol. 2, section 422.

"For the reason indicated, the action of the circuit judge in this case was correct, and is affirmed; and appellants will pay the costs."