STATE OF TENNESSEE ex rel. CHARLES H. BAIRD et al.,
Appellants,

*v.*

WILSON COUNTY, Tennessee, et al., Appellees.

371 S.W. 2d 434.

(*Nashville,* December Term, 1962.)

Opinion filed October 11, 1963.

620

SAM B. GILREATH, ALFRED MACFARLAND, PHILLIP REED, Lebanon, for appellants.

ROBERT L. FORRESTER, Watertown, LOUIS CHAMBERS, Lebanon, THOMAS W. STEELE, Nashville, GULLETT, STEELE & SANFORD, Nashville, of counsel, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The complainants have appealed from a decree of the Chancery Court sustaining defendants' demurrer to the original bill. The bill was filed May 18, 1962 in the name of the State on relation of the three members of the Board of Commissioners or Directors of the Tenth School District of Wilson County. The three realtors also sued as citizens and taxpayers of the school district and, by amendment to the bill, sued as taxpayers of Wilson County. The school district is also a complainant. The defendants are Wilson County, the members of the Wilson County Board of Education, the members of the Quarterly County Court of Wilson County, the County Judge, and the County Trustee.

In essence, the bill alleges three specific instances in which the defendants unlawfully diverted general county funds to elementary school use. It is alleged that on July 13, 1959 the Quarterly County Court authorized the county to borrow $70,000.00 for completing and equipping two new county elementary schools, that this money was borrowed by the county and used by the County Board of Education for elementary school purposes and was repaid from the general funds of the county not apportioned among the separate school systems in the county.

Next, it is alleged that on January 11, 1960 the Quarterly County Court authorized the county to borrow $18,000.00 to be used by the County Board of Education to build a water line to connect with a utility district to furnish water at the West Elementary School, operated by the County Board of Education, that in this instance, instead of borrowing the money $18,000.00 was diverted

by the County Judge from the county general fund and used to pay a part of the cost of the construction of the water line to this school.

It is further alleged that on July 11, 1960 the Quarterly County Court voted and appropriated $5,545.00 for the insulation of certain county elementary schools and for the repair of the heating systems of certain such schools, that for these purposes a total of $2,099.08 was unlawfully diverted from the general fund of the county and used for elementary school purposes. The bill then states that in these three instances during the year 1960 a total of $90,099.98 was unlawfully diverted from the county general fund and used for elementary school purposes. It is alleged that ''these appropriations were made and the expenditures were authorized with knowledge that the actions were unlawful and were in disregard of the rights of the two special school districts and the taxpayers.''

The bill then alleges that the Tenth School District of Wilson County was entitled, on an average daily attendance basis, to 36% of the elementary school funds of the county in the year 1960 and the Sixteenth School District (the other special school district in the county) was entitled to 4% of such funds. The bill alleges that in order for the county to have raised $90,099.98 of lawful elementary school funds to spend on the county elementary schools it would have been required to raise a total of $150,165,88. Of this amount, the Tenth School District would have received $54,059.72 and the Sixteenth School District would have received $6,007.08.

The bill prays for a judgment ''in favor of the Tenth School District of Wilson County, Tennessee, and against

Wilson County, Tennessee, and/or the Wilson County Board of Education for the sum of $54,059.72." It also prays that "upon the award of the aforesaid judgment as prayed for, a peremptory writ of mandamus issue" directing the members of the Quarterly Court of Wilson County to take the necessary action lawfully to provide the necessary funds to pay the judgment prayed for. The bill further prays, "That an injunction or restraining order be issued to the defendants in such manner and form as may be necessary and desirable, from the pleadings and the proof, to enjoin and restrain the further and future unlawful acts of said Defendants, as herein complained of, to prevent further misappropriations, diversion of taxpayers' monies and avoid the necessity for similar future litigation." There is also a prayer for general relief.

Certain paragraphs of the bill were stricken by the Chancellor on motion of the defendants "as being immaterial to any relief sought by complainants." It is alleged in that part of the bill which was stricken that there was a studied effort by some of the defendants "to devise ways and means of using the county nonapportioned monies for county elementary school purposes without making the lawful division with the Tenth School District." Assignments of error relating to the granting of defendants' motion to strike will be discussed later.

All of the relief sought, except the injunctive relief prayed for, is predicated upon the right of the Tenth School District to recover a judgment against "Wilson County, Tennessee, and/or the Wilson County Board of Education."

At the outset it must be borne in mind that there is no averment in the bill alleging a failure to apportion elementary school funds, the sole complaint being the unlawful diversion by the defendants of monies belonging to the county general fund by the use of these funds for elementary school purposes.

In *Board of Commissioners of Union City v. Obion County,* 188 Tenn. 666, 222 S.W.2d 7, the Quarterly County Court of Obion County had directed the County Trustee to transfer money from the county general fund to the school fund and pay a bonus to the county school teachers. The Commissioners of Union City and the Union City Board of Education brought suit against the County and the County Trustee to recover a money judgment, insisting that, when the transfer was made from the "General Fund" to the "School Fund," the city elementary school fund was entitled to share in the augmentation of the county elementary school fund in an amount based on average daily attendance in accordance with the applicable Code Sections (now T.C.A. sec. 49-607 and T.C.A. sec. 49-206 (5)).

This Court, in the Obion County case, affirmed the action of the Chancery Court in sustaining a demurrer to the bill and stated:

"The mere fact that by the resolution, the money was passed through the elementary school fund prior to its disbursement to the teachers did not change the nature of the money or make it legally a part of the elementary school fund. It was and remained a part of the county's 'General Fund,' which by an unauthorized and *ultra vires* resolution of the county court, was diverted from

.the legitimate purpose for which the county taxes which made it up, had been levied and collected.

\* \* \* \* \* \*

"The fact that the county court made an unauthorized gift of county funds to the county school teachers, can be no basis for complainants to demand that a court of equity decree a further unauthorized raid on the county treasury for their benefit.

"We hold that the Chancellor correctly sustained the demurrer and dismissed the bill, because the bill shows on its face that neither the County of Obion, J. H. Shore, Trustee, nor any of the other defendants are legally indebted to the complainants \* \* \*''.

The Obion County case has been cited with approval in *Southern Railway Company v. Hamblen County*, 188 Tenn. 672, 222 S.W.2d 9, and is cited and quoted with approval in *State ex rel. Cope v. Davidson County*, 198 Tenn. 24, 277 S.W.2d 396. The Davidson County case was instituted for the purpose of determining the rights of the Nashville City School System and the Davidson County Board of Education with respect to a division of certain county funds. The Quarterly County Court of Davidson County had levied a special tax "for teacher transportation''. The Court held that the resolutions and motions of the County Court clearly showed that the tax levy "for teacher transportation'' was in fact an effort to supplement the funds of the County Board of Education so that it could pay increased teachers salaries without apparently having to make a division of such funds with the City of Nashville, as required by the statutes. The Chancery Court in that case had held that, since these payments for teacher transportation to the

county teachers was really an increase in compensation, the fund derived from this special tax became a part of the school operating expenses subject to division between the county and the city. This Court reversed the Chancellor and held the special tax levy "for teacher transportation" to be void. In so holding, the Court stated:

"Under such circumstances, when a tax levy is made by the Quarterly County Court as a special tax, and this was with the purpose in view of using it for another thing, then such a levy is void." 198 Tenn. page 37, 277 S.W.2d page 401.

■ Both the Obion County case and the Davidson County case clearly state that funds derived from taxes levied for one purpose, when transferred by the Quarterly County Court to the school fund, do not become a part of the funds to which transferred. The unauthorized and *ultra vires* resolution of the County Court diverting funds from the legitimate purpose for which the tax to produce such funds had been levied does not change the nature of the fund or make it legally a part of the fund to which it is thus wrongfully transferred.

■ We, therefore, hold that, under the averments of the original bill in this case as amended, neither Wilson County nor any of the other defendants are legally indebted to the Tenth School District of Wilson County. The Chancellor was correct in sustaining the demurrer insofar as the bill prayed for a judgment in favor of the Tenth School District against any of the defendants and insofar as the bill prayed for a writ of mandamus to enforce collection of such judgment.

This leaves the question of whether or not, under the averments of the bill, an injunction could issue after

hearing proof in support of the allegations of complainants. There can be no doubt that the alleged action of the County Court of Wilson County in diverting the general funds of the county to elementary school purposes was unauthorized and unlawful.

In *Kennedy v. Montgomery County*, 98 Tenn. 165, 179, 38 S.W. 1075, 1079, the Court, in passing upon the legality of the use of county tax funds for a purpose other than that for which the tax was levied and collected, used the following language, which has been quoted many times since with approval by this Court:

"The taxpayers of every county have the right to know for what purpose they are being taxed, and also to know that taxes collected from them for any specific purpose are applied to such purpose, and not to some other, at the discretion of the county officials, and according to their ideas of public policy or expediency.

"The law does not provide for the mixing of special and ordinary funds, nor [for] the supplementing of one by the other by county officials. * * * When the people consent to be taxed for any purpose, they cannot complain; but when they are taxed for one purpose, and the fund applied to another, and when they are misled as to the purposes for which they are being taxed, they have a right not only to complain, but a remedy to redress the grievance, if they apply to the courts in the proper way, and at the proper time."

In *State ex rel. Davidson County Board of Education v. Pollard*, 124 Tenn. 127, 136 S.W. 427, the County Court of Davidson County had passed a resolution appropriating $20,000.00 out of its general funds for school purposes. Part of this sum was directed to be used for the

erection of school buildings and a part for repairing and improving other schools. In holding this action on the part of the County Court was unlawful, the Court stated, at page 136 of 124 Tenn., at page 429 of 136 S.W.:

"Authorities might be greatly multiplied to the same effect of those just referred to; but these, we think, are sufficient to show that it is beyond the power of county courts of this state to take moneys raised for school purposes and appropriate them for different purposes, or to take moneys raised for purposes other than school purposes and use them for school purposes.

\* \* \* \* \* \*

"All the law requires is that each fund be kept separate and used for the purpose for which it was collected. The law is simple in its provisions for the raising of funds to run the schools, and all that is required in that regard is that the particular means provided by statutes be pursued. The slipshod method of using just any fund that might be on hand and available for just any purpose that might arise is not authorized by law and cannot be sanctioned by the courts. Such methods lead but to ultimate confusion, if not more serious trouble, and should be discouraged in every department of government, state, county, and municipal."

See also *Southern v. Beeler*, 183 Tenn. 272, 295, 305, 195 S.W.2d 857, 868, 871.

▌ A taxpayer of a county may maintain an action to prevent the commission of an unlawful act by public officers, the effect of which would be to divert a public fund from the purpose for which it was intended, by law and thus increase his burden of taxation. In such cases the taxpayers have such a special interest in the subject

matter as will authorize them to maintain an injunction. *Kennedy v. Montgomery County,* supra; *Pope v. Dykes,* 116 Tenn. 230, 93 S.W. 85; *Kyle v. Cooley,* 170 Tenn. 547, 98 S.W.2d 85.

■ An injunction, of course, will not be granted unless the injury is threatened or imminent and, in all probability, about to be inflicted. The writ will not issue merely to relieve the fears or aprehensions of an applicant. *N.C. & St. L. Railway v. Railroad & Public Utilities Commission,* 161 Tenn. 592, 598, 32 S.W.2d 1043, 1045.

''To justify the Court in granting the relief it must be reasonably satisfied that there is actual intention on the part of the defendant to do the act which it is sought to enjoin, or that there is probable ground for believeing that, unless the relief is granted, the act will be done.'' High on Injunctions, Section 22.

In the light of these rules, it is necessary to examine the paragraphs of the bill which were stricken in the Chancery Court as being irrelevant:

Paragraph 20 of the bill alleges prior instances in which it is said funds from the county general fund were diverted to elementary school purposes by the Quarterly County Court. We are of the opinion that prior occasions on which the Quarterly County Court diverted general funds for elementary school purposes would be relevant on the issue of whether or not there is probable ground for believing that such diversions will be made in the future.

Paragraph 21 of the bill relates to the compromise of a former lawsuit and has no relevancy in this case. Paragraph 22 is likewise irrelevant.

Paragraph 28, among other things, alleges that there has been a studied effort by some of the defendants to devise ways and means of using county non-apportioned monies for county elementary school purposes without making the lawful division with the Tenth School District. Proof in support of this averment of Paragraph 28, under the rules relating to the issuance of injunctions, would be relevant. The averments of that paragraph relating to the geographical composition of the County Court are not relevant to the issues in this case.

Paragraph 30 relates to discussions had by complainants and others with the County Judge and other defendants who are members of the Quarterly County Court. The Quarterly County Court can speak only through its records:

"The records of courts and legislative bodies are the sole witnesses of their proceedings, and they can only be proven by duly certified copies of such records. Parole evidence cannot be heard for this purpose." *State v. True,* 116 Tenn. 294, 313, 95 S.W. 1028, 1032; *Lacefield v. Blount,* 42 Tenn.App. 511, 304 S.W.2d 515.

The personal views of the individual officials who are defendants are not relevant on the issue of a taxpayer's right to injunctive relief. It is past unlawful official acts that must be considered; therefore, the Chancellor was correct in striking Paragraph 30 as being irrelevant.

Paragraph 31 relates to the issuance of certain "High School Bonds" and does not relate to any alleged wrongful diversion of county general funds. It is stated in this paragraph that the issuance of these bonds is not a matter for which relief is sought; therefore, there was no error in striking this paragraph.

Paragraph 32 states the growth in population within the Tenth School District and the District's need for school funds. The issue is not the relative need for school funds, but whether or not taxes levied and collected are legally applied or wrongfully converted to an unauthorized use. This paragraph was properly stricken.

Paragraph 33 alleges the good faith of complainants, and Paragraph 34 refers to the alleged "pattern of conduct" on the part of defendants and the belief of complainants that this pattern will continue in the future. Proof in support of the allegations contained in these paragraphs may well be relevant on the issue of complainants' right as taxpayers to injunctive relief.

█ A bill is to be construed liberally as against a demurrer. *Bowery v. Vines,* 178 Tenn. 98, 156 S.W.2d 395. When so viewed, the bill in this case alleges that the County Judge and the Quarterly County Court have on a number of specific instances diverted county general funds to elementary school use, that this has been a pattern of conduct on the part of these defendants, that such diversion of county general funds is unlawful, and complainant taxpayers have grounds to believe that such unlawful course of conduct will be pursued in the future unless injunctive relief is granted. Such allegations, if supported by competent proof, could afford the basis for the issuance of an injunction.

In *Kennedy v. Montgomery County,* 98 Tenn. 165, 38 S.W. 1075, from which we have quoted above, this Court, in an action brought by taxpayers, reversed the Chancery Court and enjoined the future diversion of funds realized from a special railroad tax which had been levied for a number of years in Montgomery County and which

the county officials had habitually used to pay general debts of the county. In granting this relief, the Court stated:

"The complainants, however, when this bill was filed, had the right to enjoin any threatened misappropriation of the railroad funds then in the hands of the county officials, or to come into their hands thereafter, to the payment of any other debts than the railroad debt until that was wholly extinguished, and the bill should have been sustained for that purpose, and the injunction to that extent maintained; and to that extent the decree of the court below is reversed." 98 Tenn. 181, 38 S.W. 1079.

■ Under the authority of this case, which has been cited many times by this Court with approval, the action of the Chancery Court in sustaining the demurrer to the bill to the extent that the suit is brought by taxpayers of Wilson County to enjoin the future diversion of general funds of the county to elementary school uses. is reversed.

It results that assignments of error numbers 1, 8, 9, and 16 are sustained. Assignment of error number 4 is sustained to the extent shown in our discussion of Paragraph 28 of the bill. All other assignments of error are overruled.

The cause will be remanded to the Chancery Court of Wilson County for further proceedings not inconsistent with the foregoing. The costs of the appeal will be divided. The costs of the Chancery Court will be adjudged by that Court upon a final determination of the cause.

WHITE, JUSTICE, not participating.