# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2007

## STATE OF TENNESSEE v. CARLOS A. BRANCH and EDWARD ALLEN, JR.

### Appeal from the Criminal Court for Davidson County
### No. 2005-D-3309      J. Randall Wyatt, Jr., Judge

------------------------

### No. M2006-01686-CCA-R3-CD - Filed January 31, 2008

------------------------

Appellants, Edward Earl Allen, Jr. and Carlos A. Branch, entered best interest guilty pleas in Davidson County to one count of aggravated assault and one count of possession of a weapon on school property after an incident at Vanderbilt University. The plea agreement did not specify the length or manner of service of the sentences but specified that the sentences would run concurrently to each other. After a sentencing hearing, the trial court sentenced Appellants to six years for aggravated assault and two years for possession of a weapon on school property, as Range I Standard Offenders. Appellants seek a review of their sentence on appeal. Because the record supports the sentences and the trial court properly denied alternative sentencing as to Appellant Branch, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and ALAN E. GLENN, JJ., joined.

Harold Donnelly, Nashville, Tennessee, for the appellant, Carlos A. Branch and Richard D. Dumas, Jr., Nashville, Tennessee, for the appellant, Edward Allen, Jr.

Robert E. Cooper, Jr., Attorney General & Reporter; Lacy Wilbur, Assistant Attorney General; Victor S. Johnson, District Attorney General, and James Sledge, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

<u>                                 *Factual Background*</u>

In October of 2005, Appellants were indicted by the Davidson County Grand Jury for aggravated assault, reckless endangerment, and possession of a weapon on school property after an incident following a football game on the Vanderbilt University campus. On May 30, 2006, Appellants Allen and Branch each entered a best interest plea, in which they pled guilty to aggravated assault and possession of a weapon on school property. The State nolle prossed the reckless endangerment charge. At the plea hearing, counsel for the State summarized the facts of the case as follows:

> On September the 25th of last year, of 2005, in the early morning hours, at approximately 1:30, 1:45 a.m., located in Morgan Hall on the campus of Vanderbilt University, located at 1408 Twenty-Fifth Avenue South in Nashville, Davidson County.
>
>     The Vanderbilt - - part of the Vanderbilt football team was having a party on the 10th and the 11th floor of Morgan Hall, celebrating their fourth consecutive victory. [Appellants] entered Morgan Hall with or behind a female student who used her I.D. card to get into the building. . . . They went to the tenth floor. There was a confrontation because they weren't invited guests. They left the tenth floor. The [s]tate[ments] will be made, - - - would have been made, that they then left the tenth floor and went to the eleventh floor and stayed for a while with one of the guests on the eleventh floor [who] took still photographs of the defendant, which became important later when Detective Jason Proctor was assigned to this case and started the investigation.
>
>     . . . .
>
> After leaving the eleventh floor, they returned to the tenth floor where heated words were exchanged with several Vanderbilt football players who had told them to leave previously. They - - they being the [Appellants] got on the elevator, which was taped, and while on the elevator, the tape shows Mr. Allen with a handgun pointed out of the elevator shooting into a crowd. And it shows Mr. Branch holding the gun out and firing into the crowd. Mr. Branch has told the police he didn't fire. The state does have witnesses to say that both people fired.
>
>     On the floor in the elevator kind of wedged was discovered a .380 automatic shell casing. . . . The next several days, over the next four or five days, there was a blitz of media attention to this particular offense, with videotapes or C.D.'s, or

whatever, images from the elevator being shown on the t.v. channels and Crime Stoppers started getting a lot of calls. One of the distinctive features of one of the shooters were his tattoos. In fact, Detective Proctor took still photographs with the help of the Vanderbilt University Police Department of those tattoos and was able to get them identified, specifically, as to Carlos Branch. And then Crime Stoppers started getting calls on Mr. Allen and Mr. Branch and everybody else.

On the 29th of September, some four days later, Mr. Branch accompanied by his, then, attorney, . . . , turned himself in to Detective Proctor and the Metro Police Department. A short time later, and I don't remember the specific date, Mr. Allen who was staying with his girlfriend in another part of Nashville, their apartment was approached by Metro Police Department. Mr. Allen was taken into custody on outstanding warrants. As he got out of the shower, the .380 Lorsen, semi-automatic, was found under the mattress. And he made a statement to the Police Department.

*Sentencing Hearing*
*State's Proof*

At the sentencing hearing, the State presented the testimony of the victim, George Smith, who was shot in the right bicep during the incident. Mr. Smith testified that he was a Vanderbilt University football player and attended a party in Morgan Hall after the Richmond football game in the fall of 2005. Appellants came to the party uninvited and were asked to leave the party by several people. When Appellants did not leave, several of the football players, including Zach Logan, began acting "aggressively in a verbal way" toward Appellants. Appellants backed down the hallway and got onto the elevator. Mr. Smith walked out into the hallway toward the elevator as Appellants retreated from the party. Mr. Smith was not involved in the verbal altercation but went into the hallway to be a "peacemaker." The Appellants stood in the elevator with the door open while they exchanged verbal threats with several of the people from the party. At one point, Mr. Smith reached out to pull Mr. Logan back away from Appellants, who remained in the elevator. Soon thereafter, Mr. Smith heard a gunshot. Everyone took off running and Mr. Smith was unsure if there was a second shot fired.

Detective Jason Proctor of the Metro Nashville Police Department investigated the incident. He obtained the videotape from the elevator, which showed both Appellants with handguns drawn in the elevator. According to Detective Proctor, Appellant Branch admitted having a gun on campus but was unsure whether the gun had fired because of the "emotion of the moment." Appellant Branch told police he possessed a single shot .22 derringer.

*Appellant Allen's Proof*

Appellant Allen testified at the sentencing hearing. He claimed that he and Appellant Branch were invited to the party by a female Vanderbilt student. According to Appellant Allen, he and Appellant Branch were only at the party for a short time before being confronted by Mr. Logan, who

was "screaming obscenities" at them. Appellants Allen and Branch felt "threatened," so they started backing down the hallway toward the elevator. They were followed by Mr. Logan and several other football players. Appellant Allen tried to shut the elevator door, but something caused it to open again. Appellant Allen did not know who fired the first shot but admitted that he later fired a shot down the hallway. During his incarceration, Appellant Allen obtained his GED and completed an anger management program. Appellant Allen apologized to the court for carrying a weapon onto school grounds and to the victim for his injuries.

Appellant Allen's mother testified that if Appellant Allen received probation, he could live with her in Memphis.

*Appellant Branch's Proof*

Appellant Branch's mother testified that she and Appellant Branch have joint custody of Appellant Branch's three children. Appellant Branch is married but separated from his wife who is the mother of his three children. According to Mrs. Branch, Appellant Branch's incarceration has had a negative effect on the children.

Appellant Branch's father, a minister, also testified. Mr. Branch acknowledged his son's various problems with law enforcement. According to Mr. Branch, Appellant began getting in trouble after he and Appellant's mother separated in 1996.

Appellant Branch testified that, at the time of the hearing, he was twenty-six years old and had obtained his GED. Appellant Branch apologized for having a gun on the Vanderbilt campus and for shooting the victim.

Appellant Branch's testimony corroborated Appellant Allen's synopsis of the party. They were invited to the party by a female Vanderbilt student and were confronted by Mr. Logan shortly after arriving at the party. Mr. Logan began backing Appellants Branch and Allen down the hallway and into the elevator. Appellant Branch drew his gun against threats made by Mr. Logan, and swore initially that he did not shoot his weapon. At the sentencing hearing, Appellant stated that he later realized that he had discharged his weapon into the crowd.

*Ruling of the Trial Court*

Based on the evidence presented at the sentencing hearing, the trial court sentenced Appellants to six years in incarceration for aggravated assault and two years in incarceration for possession of a weapon on school property. The trial court applied several enhancement factors to enhance Appellant Branch's sentence to the maximum in the range. The trial court applied one enhancement factor to Appellant Allen's sentence, again enhancing it to the maximum in the range. The trial court found that no mitigating factors applied.

On appeal, Appellant Branch contends that the trial court improperly applied enhancement factors, failed to apply mitigating factors, and that the trial court erred by denying an alternative to incarceration. Appellant Allen, on the other hand, argues that the trial court improperly applied an enhancement factor to increase his sentence to the maximum in the range and that the trial court's sentence should not be reviewed with a presumption of correctness because the trial court failed to properly consider sentencing principles.

*Analysis*
*Sentencing*

We begin our analysis with a brief discussion of recent changes in Tennessee's sentencing statutes. In response to the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee General Assembly amended the T.C.A. § 40-35-210 so that all felonies now have a presumptive sentence beginning at the minimum sentence within the sentencing range. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006); *see also* 2005 Tenn. Pub. Act ch. 353, § 18. This amendment became effective on June 7, 2005. The General Assembly also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Acts ch. 353, § 18. In the case sub judice, Appellants committed the criminal offenses at issue in September of 2005; therefore, the new act applies to our review of their sentencing.

At the outset it should also be noted that the 2005 amendments to our sentencing laws curtailed to some degree the grounds that may form the basis on an appeal of a sentencing decision. *Compare* T.C.A. § 40-35-401 (2003) *with* T.C.A. § 40-35-401 (2006). The amended T.C.A. § 40-35-401(b) (2006) differs on one key point:

(b) An appeal from a sentence may be on one (1) or more of the following grounds:

(1) The sentence was not imposed in accordance with this chapter;

(2) The sentence is excessive under the sentencing considerations set out in §§ 40-35-103 and 40-35-210; or

(3) The sentence is inconsistent with the purposes of sentencing set out in §§ 40-35-102 and 40-35-103.

Prior to 2005, T.C.A. § 40-35-401(b) (2003) stated, "An appeal from a sentence may be on one (1) or more of the following grounds: (1) The sentence was not imposed in accordance with this chapter; or (2) The *enhancement and mitigating factors were not weighed properly*, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." T.C.A. § 40-35-401(b) (2003) (emphasis added).

We now analyze the amended statute to determine on what grounds a criminal defendant may seek relief from the sentence imposed by the trial court. Generally, when construing a statute, every word within the statute is "'presumed to have meaning and purpose and should be given full effect.'" *State v. Odom*, 928 S.W.2d 18, 29-30 (Tenn. 1996) (quoting *Marsh v. Henderson*, 424 S.W.2d 193, 196 (Tenn. 1968)). This Court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995); *see also State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned "from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Carter v. State*, 952 S.W.2d 417, 419 (Tenn. 1997). Furthermore, this Court should construe a statute "so that its component parts are consistent and reasonable," and inconsistent parts "should be harmonized, where possible." *Odom*, 928 S.W.2d at 30. When the General Assembly has amended a statute, "[i]t is a proper method to determine what the intention of the Legislature was for us to look at prior acts . . . ." *State v. Davidson County*, 277 S.W.2d 396, 401 (Tenn. 1955). In addition, "[w]hen the legislature makes a change in the language of a statute, we must assume that it was deliberate." *State v. Turner*, 193 S.W.3d 522, 527 (Tenn. 2006).

The fact that the General Assembly deleted the language regarding the weighing of enhancement and mitigating factors demonstrates that the General Assembly intended that a defendant may no longer allege as grounds for relief on appeal that the sentencing court erroneously weighed sentencing enhancement factors.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "This presumption will be virtually irrebuttable if there is a factual basis for the consideration of the enhancement factor, the enhancement factor considered is not an element of the offense, and, in addition, the consideration of the factor is not inconsistent with the purposes of sentencing considerations set out in T.C.A. §§ 40-35-103 and -210." *State v. Terrance Patterson*, No. W2005-01638-CCA-R3-CD, 2007 WL 2700160, at *10 (Tenn. Crim. App., at Jackson, Sept. 17, 2007) (permission to appeal filed Nov. 16, 2007).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing the sentence within the appropriate sentencing range for the defendant:

[T]he court shall consider, but is not bound by, the following *advisory* sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006) (emphasis added).  With this background in mind we turn to the propriety of Appellants' sentences in this case.

*Sentencing in the Case Sub Judice*

*Appellant Branch*

At the sentencing hearing, the trial court found that there was ample factual support for the consideration of four enhancement factors with respect to Appellant Branch. The trial court considered the following factors: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range; (8) the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and (10) the defendant had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114(1), (8), & (10) (2006).  The trial court also determined that the crime was committed under circumstances in which the potential for bodily injury to a victim was great. *See* T.C.A. § 40-35-114(17) (2003).[1]  The trial court did not apply any mitigating factors. Following these findings, the trial court ordered Appellant Branch to serve a six-year sentence as a Range I offender for the aggravated assault conviction and two years as a Range I offender for the carrying a weapon on school property conviction.  In other words, the trial court sentenced Appellant Branch to the maximum sentence in the range for each offense. *See* T.C.A. § 40-35-114(a).

In conducting our review of the trial court's sentencing determinations, we must consider the appellant's potential for rehabilitation, the trial and sentencing hearing evidence, the presentence

---

[1]As noted previously, Tennessee's sentencing statutes have been significantly amended.  The enhancement factors were amended effective June 7, 2005, prior to the sentencing of Appellants herein. *See* T.C.A. § 40-35-114. Factor (17), as applied by the trial court to Appellant Branch, does not appear as an enhancement factor in the 2005 amendments to T.C.A. § 40-35-114.

report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, any statistical information presented by the administrative office of the courts regarding sentencing practices for similar offenses in the state, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b) (2006).

After reviewing the record in this case, we find ample evidence to support the trial court's consideration of enhancement factors (1), (8), and (10), therefore, the trial court could properly consider them with regard to Appellant Branch's convictions. Factor (1), Appellant has a previous history of criminal convictions, is illustrated by a list of previous convictions in his presentence report, including, among other things, five assaults, one aggravated assault, and two weapons offenses. This factor was properly considered as to both counts. The consideration as to both counts of factor (8), failure to comply with the conditions of a sentence involving release into the community, is supported by the record. The record indicates that Appellant Branch violated probation in 2000. The consideration of factor (10), Appellant had no hesitation about committing a crime where the risk to human life was high, is supported by the fact that Appellant fired a gun from an elevator into a crowded hallway on a college campus. The trial court also applied factor (17), Appellant committed the crime under circumstances in which the potential for bodily injury to a victim was great. *See* T.C.A. § 40-35-114(17) (2003). Irrespective of whether the trial court should have applied enhancement factor (17), we determine that the three properly considered enhancement factors support Appellant Branch's sentence.

Appellant Branch also complains that the trial court failed to consider any mitigating factors. Our review of the record reveals that counsel for Appellant Branch submitted several mitigating factors to the trial court prior to the sentencing hearing. Specifically, at the sentencing hearing, counsel for Appellant Branch argued that the following mitigating factors applied: (3) that there were grounds to excuse or justify the criminal conduct; (5) Appellant Branch acted under strong provocation; (10) Appellant Branch assisted the authorities; (11) the offense was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated Appellant Branch's conduct; (12) that Appellant Branch acted under duress or domination of another; and (13) other factors consistent with the Criminal Sentencing Reform Act of 1989 including strong family ties, expression of remorse, and the need to help raise his children weighed in favor of mitigation. *See* T.C.A. § 40-35-113(3), (5), (10)-(13). In pronouncing the sentence, the trial court did not state on the record whether it specifically considered the mitigating factors in determining Appellant Branch's sentence. The trial court, however, did state that it had "no tolerance" for the actions of Appellant Branch while recognizing that Appellant Branch was "apologetic" and that his family said "good things" about him. Ultimately, the trial court concluded that Appellant Branch had to "pay the penalty" for his actions. After our de novo review of the trial court's sentencing determinations herein, we determine that the gravity of Appellant Branch's actions in carrying a firearm to a party on a university campus, crashing that party, refusing to leave when requested, and firing into a group of people wounding a person, far outweighs any weight that Appellant Branch's proffered mitigating factors might provide. This issue is without merit.

*Appellant Allen*

At the sentencing hearing, the trial court found that there was ample factual support for the consideration of one enhancement factor with respect to Appellant Allen. The trial court considered the following factor: (10) the defendant had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114(10) (2006). The trial court also mentioned the fact that Appellant Allen used a gun but did not utilize an enhancement factor in that regard. The trial court did not apply any mitigating factors. Following these findings, the trial court ordered Appellant Allen to serve a six-year sentence as a Range I offender for the aggravated assault conviction and two years as a Range I offender for the conviction for carrying a weapon on school property. In other words, the trial court also sentenced Appellant Allen to the maximum sentence in the range for each offense. *See* T.C.A. § 40-35-114(a). Apparently, the trial court gave great weight to this sole enhancement factor and this decision is presumptively correct. This issue is without merit.

*Denial of Alternative Sentence*

Appellant Branch challenges the trial court's denial of an alternative sentence. Specifically, he argues that the trial court based the denial of an alternative sentence on the seriousness of the offense but did not find that his offense was "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," as required by *State v. Hartley*, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991). The State counters that the trial court properly denied alternative sentencing.

In regards to alternative sentencing, T.C.A. § 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, the trial court must presume that a defendant sentenced to eight years or less is an offender for whom a sentence other than incarceration would result in successful rehabilitation. *State v. Byrd*, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); *see also* T.C.A. § 40-35-303(a).

Appellant Branch pled guilty to one count of aggravated assault, a Class C felony, and one count of possession of a weapon on school grounds, a Class E felony. Because Appellant Branch

was convicted of Class C and E felonies and sentenced to fewer than eight years for the offenses, Appellant Branch was eligible for probation and was presumed to be a favorable candidate for alternative sentencing. *See* T.C.A. §§ 40-35-102(6) & -303(a); *Byrd*, 861 S.W.2d at 379-80. However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under T.C.A. § 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider T.C.A. § 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

At the conclusion of the sentencing hearing, the trial court noted that Appellant Branch was presumed eligible for alternative sentencing. However, the court noted that:

> [C]onfinement is necessary here to avoid depreciating the seriousness of the offense. And I consider this to be serious.
>
> And confinement is particularly suited to provide an effective deterrent to others who would be likely to commit a similar offense.
>
> So the Court's of the opinion that it's [sic] too serious to depreciate it by putting these men on probation. They can serve their sentences.

Thus, it appears that the trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense and for deterrence. As noted by Appellant Branch, probation may be denied based solely upon the circumstances surrounding the offense. *State v.*

*Hartley*, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). To deny probation solely on these grounds, however, the offense "must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or an exaggerated degree." *Id.* Appellant Branch argues that his offenses do not rise to this level. We do not agree. In *State v. Trotter*, 201 S.W.3d 651 (Tenn. 2006), the Tennessee Supreme Court looked to the record to consider the circumstances of the offense verus the favorable factors for alternative sentencing to determine whether the denial of an alternative sentence on the basis of the seriousness of the offense was appropriate. 201 S.W.3d at 655. In that case, the court determined that the circumstances surrounding the theft of nearly $500,000 by the defendants from one of the defendant's employers was so "reprehensible, offensive or otherwise of an excessive or exaggerated degree" that it outweighed the mitigating evidence of the defendants' good character and remorse. *Id.* The court noted "the same conclusion [had been reached by courts of this State] upon less egregious facts." *Id.* (citing *State v. Davis*, 940 S.W.2d 558, 559-561 (Tenn. 1997) (upholding the denial of probation for the offense of vandalism where the estimated damage was twelve hundred dollars based on the trial court's considering the seriousness of the offense and general deterrence where the vandalism was in retaliation for crossing a picket line).

In the case herein, Appellant Branch walked onto a college campus carrying a concealed gun and attended a party in a dormitory. When asked to leave the party, Appellant Branch brandished his gun and fired shots from an elevator into a hallway crowded with partying college students. The shots that were fired struck Mr. Smith in the arm, causing him injuries. At the sentencing hearing, the trial court noted Appellant Branch's prior criminal convictions. Appellant Branch himself admitted that he had been on probation one or two times and had a violation of probation in 2000. Appellant Branch did express remorse for the crime and for the injuries sustained by Mr. Smith. While we acknowledge that Appellant Branch may have the potential for rehabilitation, in our view, the evidence of the crime is "reprehensible, offensive or otherwise of an excessive or exaggerated degree" to the extent that it outweighs Appellant's mitigating circumstances. *Id.*

Because we have concluded that the circumstances here are indeed offensive, excessive, and of an exaggerated degree, we conclude that the seriousness of the offense alone supports the denial of alternative sentencing and that a sentence of confinement is necessary to avoid depreciating the seriousness of the offense.

Moreover, the record indicates that Appellant has a "history of criminal conduct" and that "measures less restrictive than confinement have . . . recently been applied unsuccessfully to the defendant . . . ." T.C.A. § 40-35-103(1)(A) & (C). Accordingly, we determine that Appellant Branch has failed to show that the trial court's denial of probation was improper. Consequently, we conclude that the trial court properly ordered Appellant Branch to serve his sentence in incarceration. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

JERRY L. SMITH, JUDGE