STATE OF TENNESSEE *ex rel.* QUILL E. COPE, STATE COM-
MISSIONER OF EDUCATION, ETC., *v.* DAVIDSON COUNTY *et al.*

*(Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

RAYMOND H. LEATHERS, ANDREW D. TANNER and ALBERT WILLIAMS, all of Nashville, for complainants below.

ELMER D. DAVIES, JR. and CHARLES L. CORNELIUS, both of Nashville, for defendants below.

26

Mr. Justice Burnett delivered the opinion of the Court.

We will refer to the litigants in the position they occupied in the Chancery Court. Both parties to the cause, which was heard on demurrer, have appealed and assigned error. The suit was filed under the Declaratory Judgment Act (Williams' Code, Section 8835 et seq.) by and through the Commissioner of Education for the use and benefit of the City of Nashville, its Board of Education, etc., against Davidson County, its Trustee and Davidson County Board of Education.

The purpose of the suit was for a declaration of the rights of the parties with respect to a division of certain County School funds between the City and County (a non-equalizing County) under the provisions of Chapter 70 of the Public Acts of Tennessee for the year 1953. This Act has been codified in the Williams' Code, Section 2417.176 et seq.

The suit presents a case of construction of certain sections of this Act, more in particular Section 13 of the Act which is codified as Code Section 2417.188. Incidentally Section 12, codified as 2417.187, is likewise involved. Section 3 of the Act, Code Section 2417.178, makes it clear that only the two sections mentioned are relevant for determination of the proper distribution of the State funds in "non-equalizing" counties and the division of the total school fund between the County and the Cities

located therein. There is no question but that Davidson County is a "non-equalizing" County within the meaning of the Act, Chapter 70 of the Public Acts of 1953.

Section 13, Code 2417.188, reads as follows:

"Section 13. Be it further enacted, That each and every non-equalizing county in this State shall levy not more than *one tax for current school operating purposes* for all grades, one through twelve (or such of these grades as may be included in the local school program), and the County Trustee shall place in *one fund,* separate and apart from all other funds coming into his hands, *all current school revenues received* from County and State sources *for school purposes,* and all local school funds raised or collected by any county participating in State school funds *shall be apportioned by the County Trustee to the county, cities, and special school* districts therein, on the basis of the average daily attendance maintained by each in grades one through twelve during the preceding school year. *However, it is specifically provided that non-equalizing counties maintaining a system of public school transportation may levy a special tax for said purpose.* In the event any non-equalizing county maintain a system of public school transportation and elects to levy a special tax therefor, the proceeds of such special tax, together with such funds as may be received from the State for public school transportation purposes, shall be placed by the County Trustee in a *special account hereafter* to be known as the public school transportation fund, and the same shall be disbursed on order of the County Board of Education for public school *transportation services only.* This paragraph shall not be construed to affect Chap-

ter 711, Private Acts of 1947, but said Act shall remain in full force and effect.

"When State school funds, appropriated under Section 2 of this Act and distributed under the provisions of this Act, are received by the County Trustee, they shall be apportioned within 10 days among the county, cities, and special school districts therein, according to amount as certified under the authority of the State Commissioner of Education. In making the certification to the County Trustee as to the amounts of State funds to be distributed by the Trustee as between the county and the cities and special school districts therein, the provisions of this Act shall be strictly followed." (Italics ours.)

We have italicized the salient and pertinent points in the Section which are here applicable. It will be readily noticed upon reading and rereading this provision of the Act (we have read and reread it many times) that first, the County Trustee establishes one fund and keeps this fund separate and apart from all others that come into his hands and that this fund arises from a single tax levy made by the County "for current school operating purposes for all grades, one through twelve"; and two, that the fund is to be apportioned by the County Trustee to counties and cities and special school districts from the grades one through twelve, according to the preceding year; and three, there is a proviso which says that these non-equalizing counties, such as Davidson, may, if it maintains a system of public school transportation, levy a special tax for this purpose and that such a special tax shall likewise be kept separate and disbursed by the Board of Education of the County "for public school transportation services only."

The tax resolution of the County Court among other things contained:

"Public School Fund * * * 1.23 (7c of the levy for Public School Fund of $1.23 shall be allocated and placed to the credit of Rural School Building and Repair Fund and used exclusively for that purpose.)"

This appropriation of the 7c for rural school building and repair fund was attacked in the bill of the City. If the 7c levy is taken from the $1.23 there would only be left $1.16 in which the complainant would share because these cities in the non-equalizing counties do not share in special appropriations for school buildings and repair. The Chancellor held against the bill on this question and with the County that this 7c levy as shown in the quotation above "was to be used for current school operating purposes, and that the said 7c was treated and considered as a separate levy for 'rural school buildings and repair fund' * * * It follows that the Court has reached the conclusion that the City is not entitled to any pro rata of the said 7c levy."

This action of the Chancellor is assigned as error by the complainant. The Chancellor based his conclusion, on this point, on our case of *Southern* v. *Beeler,* 183 Tenn. 272, 195 S. W. (2d) 857, 865. In that case, *Southern* v. *Beeler,* supra, this Court, speaking through the present Chief Justice held that a levy made by the Knox County Court "for the building, repair, and equipment of rural schools" was an authorized special levy for the subject under sub-section 7 of Section 2346 of Williams' Code. The Court said, 183 Tenn. at page 290 of our reports, 195 S. W. (2d) at page 865, that:

"Now in the instant case the quarterly court levied a special tax for this purpose, that is, to repair and

equip rural schools. We think the learned Chancellor was in error in holding that the fund raised from this special tax should be regarded as a part of elementary school funds and subject to division with the City of Knoxville based upon the average daily attendance.''

It is very forcefully and ably contended on behalf of the complainant that since the enactment of Chapter 70 of the Public Acts of 1953 (here involved) that this Act altered the provisions of sub-section 7 of Section 2346 of the Code particularly referred to by this Court in *Southern* v. *Beeler,* supra. We do not agree with this contention. We think that the Chancellor was correct here, in view of the holding of this Court in *Southern* v. *Beeler,* supra. This court in its holding in *Southern* v. *Beeler,* supra, had before it Code Section 2346 and particularly sub-section 7 thereof and in view of those sections it held that the County Court was authorized to make such special levy. This Code Section, 2346, is one of the sections specifying the duties of the County Court and authorizing the County Court to do certain things. At the time the Legislature enacted Chapter 70 of the Public Acts of 1953, here involved, it is presumed to have known the action of this Court in *Southern* v. *Beeler,* supra, in holding that the County Court had the authority and right under the Code Section there cited to make a special appropriation thereunder. In view of this fact, since the present legislation, Chapter 70 of the Public Acts of 1953, made no reference to Code Section 2346 or any of its sub-sections, then it is presumed that the Legislature knew that the County Court could make such special appropriations under that Act and consequently it must have been satisfied that that Court had a right to do so. The reasoning in *Southern* v. *Beeler,*

supra, on this point seems to counter any idea that the fund here raised should be shared by the cities in non-equalizing counties. We think that since this is true that clearly the County Court had this right and that this is a valid levy.

Of course the argument is also made, and it is indeed very strong, that the use of the words ''public school fund'' in the amount of $1.23 makes this fund that amount; that the 7c or the reduction to $1.16 of the ''Public school fund'' cannot be made in the manner in which the County Court made it, that is, by their inserting right under it, in parentheses, as they did, that 7c of the fund was for rural school repairs. It is argued that this is purely an administrative matter for the School Board to do in dividing up their funds among the various things when they get this money. The Chancellor held that this was very inartificial but that it was perfectly obvious what the intent was and that it was the duty of the Chancery Court to look to intent rather than substance. It was obvious that it was the intention of the County Court to carve this 7c out of the $1.29 and make it only $1.16 for public school fund and thus by carving it out as they did they had made a separate special 7c levy.

In addition to the other arguments against this contention counsel likewise makes the argument that the Trustee in making out his slip to the taxpayer cannot show them just exactly the division of how these funds go, as is his duty under Code Section 1552. In the first place we think that we must presume that the officer will do his duty. Upon reading this section (Code Section 1552) it is seen that the Trustee has a certain latitude in working these things out so that the people can see ex-

actly where their funds go. We think, too, that as far as this Court is concerned that if we can look to the budget as submitted by the County Court and see that this fund is separate, as is shown here, and for the purpose, that then that is sufficient. It results that we must overrule the assignment of error of the complainant to this question.

This Court in considering the question in *Southern* v. *Beeler,* supra, concluded that the expense of repairing school buildings should not be made to depend upon the average daily attendance of students, and was not intended to be considered a part of the "operating expenses of the school", which were and are by legislative enact-ment, (they were at the time of *Southern* v. *Beeler*) and are now required to be divided in these nonequalizing counties between the county and the city located therein.

By another resolution in the County Court that Court offered a resolution:

"That the Budget Resolution, Item 1400-13, School Transportation, be amended by adding thereto a subsection (a) to read as follows: '(a) Teacher Transportation, $90,000.00.' "

This resolution failed but an amendment was offered "by substituting $170,000.00 in the place and stead of $90,-000.00." This amendment was adopted.

Prior to this resolution there were other resolutions and motions showing that it was clearly the intention of the County Court to try in some way to supplement the funds of the County Board of Education so that they could pay increased teachers' pay without apparently having to make a division of such funds, as required by statute, with the City of Nashville. This final resolution, though, was to increase the "school transportation appropriation by $170,000.00."

The County Board of Education then adopted a resolution to the effect that this $170,000, which had been appropriated "for teacher transportation", should be paid to the regular teachers at the end of their nine months service or if they resigned in the meantime on the basis of $20 per month or $180 to each teacher. The Chancellor held that if he applied the same reasoning to this portion of the budget that he applied to the building and repair fund that he would look to the substance and not to the form, and since these payments to teachers was really an "increase in compensation and became a part of the school operating expenses, subject to division between the County and the City under Chapter 70 of the Public Acts of 1953".

It is to this action of the Chancellor that the defendants complain and have appealed and assigned error. We think that it was error in that the funds raised by the resolution for "teacher transportation" transferred to another fund (the school fund) by the court do not become part of funds to which transferred. This Court very recently had the question before it in *Board of Commissioners of Union City* v. *Obion County,* 188 Tenn. 666, 222 S. W. (2d) 7, 8. There Obion County had illegally transferred certain money from the "general fund" of the County to the "elementary school fund" and had disbursed it to the County teachers. This Court speaking through the late Mr. Justice Gailor said:

"The mere fact that by the resolution, the money was passed through the elementary school fund prior to its disbursement to the teachers did not change the nature of the money or make it legally a part of the elementary school fund. It was and remained a part of the county's 'General Fund,' which by an un-

. authorized and ultra vires resolution of the county
court, was diverted from the legitimate purpose for
which the county taxes which made it up, had been
levied and collected.''

Obviously for what has been said about the fund here
the portion designated as ''teachers' transportation''
could not be so diverted. The following from *Kennedy* v.
*Montgomery County*, 98 Tenn. 165, 179, 38 S. W. 1075,
1079, has been often quoted.

''The taxpayers of every county have the right
to know for what purpose they are being taxed, and
also to know that taxes collected from them for any
specific purpose are applied to such purpose, and not
to some other, at the discretion of county officials,
\* \* \*.''

■■ After a very thorough study of Chapter 70 of the
Public Acts of 1953, and more particularly Section 13
thereof, we are of the opinion, in reference to the proviso
contained therein as to ''public school transportation'',
that such public school transportation does not include
the transportation of teachers. It seems to us that when
one makes a special levy under the proviso to Section 13
(as far as we know this is the only provision anywhere
in the statute that such a thing can be done) it cannot be
made for the exclusive purpose of ''teacher transporta-
tion''. Provisos of the kind here in question must be
strictly construed.

''This is true because the legislative purpose set
forth in the general enactment expresses the legisla-
tive policy and only those subjects expressly ex-
empted by the proviso should be freed from the oper-
ation of the statute.''

Sutherland Statutory Construction, 3rd Edition, Horack,
Vol. 2, Sec. 4933; *Trice* v. *McGill*, 158 Tenn. 394, 398, 13

S. W. (2d) 49; *Powers* v. *Vinsant,* 165 Tenn. 390, 393, 54 S. W. (2d) 938.

Section 13 of the Act provides that if these nonequalizing counties levy a special fund for "maintaining a system of public school transportation" that the Trustee of the County shall have a special account for such fund and it shall be disbursed on order of the County School Board for "public school transportation services only."

The preceding section of the Act, Section 12, Code Section 2417.187, authorizes payment out of the State funds to "non-equalizing counties maintaining a transportation system approved by the State Board of Education," an amount "not to exceed eight ($8.00) Dollars per pupil", who are in average daily attendance and who live not less than 1½ miles from the nearest school of the appropriate rate, etc.

Section 8 of the Act relates to the equalizing counties and provides that funds are appropriated for "pupil transportation" and it provides that "Pupil transportation services shall be defined under Rules and Regulations prescribed by the State Board of Education and approved by the State Commissioner of Education. * * *."

Then this same Section 8 relates in part to non-equalizing counties under the head of "Other Current Operating Expenses", travel expense for the county superintendents and members of the boards of education, etc., teachers and homebound children and teachers rendering service on a county-wide basis. And this section of the Act provides for reimbursement "under the rules and regulations of the State Board of Education." Thus it clearly seems to us from an analysis of the Act (there is the proviso in Section 13 of the Act for "public school transportation") clearly means that this is for pupil

transportation. Regardless of the breadth that we might give these words the Legislature clearly meant that this fund should be raised for pupil transportation and not for teacher transportation. It is a proper method to determine what the intention of the Legislature was for us to look at prior acts in determining what the object of this Act was. Sutherland Statutory Construction, 3rd Edition, Horack, Vol. 2, Sec. 4905, page 390; Sec. 5002, pages 483-4; Sec. 5110, pages 526-8; *Nashville Gas & Heating Co.* v. *City of Nashville,* 177 Tenn. 590, 595, 152 S. W. (2d) 229 and others. When we review the Education Acts of this State beginning with the General Act of 1925 we can find nowhere in any of these Acts that there was any provision for ''teacher transportation''. All of the transportation acts insofar as we can find relate only to ''pupil transportation''. Then, too, we know as a matter of fact—it is a matter of general knowledge—that the transportation provided is for pupil transportation in the various counties in the State. It is not entirely logical and sound to provide teacher transportation. Obviously, if this were done (provide for teacher transportation) it would be another way of supplementing the teachers' salaries. If the Legislature wants to provide teacher transportation, the Legislature should and must say so in unmistakable terms, otherwise it seems to us that it is very clear from past Acts of the Legislature and from just common knowledge that the Legislature has never yet nor does not mean in the instant case to provide ''teacher transportation''.

▮ From a study and reading of the minutes and resolution of the County Court herein in reference to this ''teacher transportation'' part, it is clear to us as was found by the Chancellor that the purpose of the County

Court in providing this sum was to supplement the teachers' salaries. The Chancellor found this to be true on sound reasoning. Under such circumstances, when a tax levy is made by the Quarterly County Court as a special tax, and this was with the purpose in view of using it for another thing, then such a levy is void. *Southern R. Co.* v. *Hamblen County,* 188 Tenn. 672, 673, 222 S. W. (2d) 9. The Court in reaching this conclusion in the Hamblen County case again quoted from *Kennedy* v. *Montgomery County,* supra. See also *Southern Railroad Co.* v. *Hamblen County,* 115 Tenn. 526, 92 S. W. 238, in an excellently reasoned opinion by the late Mr. Justice Shields.

▮▮▮ It is very ably argued by the defendant County that should we find this teacher transportation portion of the levy unauthorized that all that we can do about it is just to leave it in the County treasury as is. There are many reasons assigned for this, one of which is the maxim that "a Judge does not give more than what the complaining party himself demands" which is an interpretation of the Latin "Judex non reddit plus quam quod petens ipse requirit". We think, though, that under the prayer for general relief and under the general supervisory authority of the Commissioner of Education as given him by statute, Code Section 2314, subdivision 5, and the nature of this bill, being a declaratory judgment suit, that it is our duty when such appears to us, as it does herein, that the levy is void, it is our duty to hold the levy void.

For the reasons expressed herein the decree below is affirmed in part and reversed in part. A decree may be drawn accordingly. The costs of the cause will remain as they were below, dividing them equally between the respective parties, plaintiff and defendant.