**CITY OF HARRIMAN et al., Petitioners,**

v.

**ROANE COUNTY, Tennessee, et al., Respondents.**

Supreme Court of Tennessee.

July 25, 1977.

William A. Newcomb, Harriman, for petitioners.

Joe H. Walker, Harriman, for respondents.

## OPINION

HARBISON, Justice.

This action was instituted by the City of Harriman, its Board of School Directors and some taxpayers, seeking a declaratory judgment and incidental relief against Roane County and certain of its officials in connection with the distribution of public funds. Also involved was the interpretation of a contract executed between officials of the respective city and county school systems.

The case was tried on oral testimony. The Chancellor resolved the contract issues favorably to the contentions of the plaintiffs, petitioners here, holding the contract to have been cancelled. He also awarded the city schools a proportionate share, based upon average daily attendance, of certain payments received by the county in lieu of property taxes. No appeal has been taken as to either of these aspects of the case.

The Chancellor held that the city school system was not entitled to a division of payments being made by the county representing interest on certain school bonds assumed by the county. He also held that the city system was not entitled to share in proceeds derived from a wholesale beer tax, which proceeds were being allocated by the Quarterly County Court to the annual budget of the county schools. He further concluded that the city could not share in certain county sales tax receipts which were also being allocated to the regular county school budget.

The Court of Appeals affirmed the Chancellor in denying the claims of the city school system to any of these funds. We granted certiorari to give further consideration to the issues.

### A. Interest on School Bonds Assumed by the County

Both the pleadings and the testimony in regard to this issue are brief. Prior to 1973 the City of Rockwood operated a separate school system within Roane County. In that year the county purchased the schools and related equipment from the City of Rockwood. It assumed responsibility for the payment of school bonds which had been issued by the city. There is testimony that the county makes semi-annual payments to the city out of the county "debt service fund" so that the city may retire these bonds and pay the interest thereon. This debt service fund is created by a special property tax levied by the county.

According to the pleadings and statement of counsel, the county has either paid or is paying to the City of Harriman a proportionate amount of the principal of these school bonds, although it denies any legal obligation to do so.[1] The petitioners contend, however, that the city is also entitled to receive from the county additional amounts representing the interest and debt service on the bonds.

No authority has been cited by the petitioners in support of this proposition. They basically contend that the city is entitled to an apportionment pursuant to T.C.A. § 49–605, which directs apportionment of all school funds "for current operation and maintenance purposes collected by any county . . . ."

■ It affirmatively appears from the record that the funds used to retire the Rockwood school bonds are not derived from the county school tax or any other

1. *But see* T.C.A. § 49–711.

funds allotted to the annual county school budgets. Apparently the bonds are being retired under a separate county-wide tax, and both interest and principal are being paid out of that levy. It is not shown that the funds used for retirement of these bonds are "for current operation and maintenance purposes", and we affirm the holding of the courts below that the city is not entitled to a division of the amounts representing interest payments and debt service. The assignments of error pertaining to this issue are overruled.

### B. *The Wholesale Beer Tax*

It is the basic insistence of petitioners that the Quarterly County Court is not authorized by law to apply the proceeds of the wholesale beer tax to the regular county school fund, and that such action on its part is illegal. Neither court below appeared to consider this contention. Without citation of authority, both of them held that the Quarterly County Court could, in its discretion, so allocate these tax proceeds without making any division with the separate city school system.

We are of the opinion that the position of the petitioners is correct, under well-settled authorities in this state, and that the action of the Quarterly County Court is improper. Under the same authorities, since the action taken is unauthorized, the petitioners are not entitled to share in these illegally appropriated funds, and the only relief which can be given is a permanent injunction, restraining such allocation in the future.

T.C.A. § 49–605 provides as follows:

"A. For each school system there shall be levied for current operation and maintenance not more than one school tax for all such grades as may be included in the local school program. Each system shall place in one separate school fund all school revenues for current school operation purposes received from the state, county, and other political subdivisions, if any. . . . All school funds for current operation and maintenance purposes collected by any county, [with an exception not here pertinent] shall be apportioned by the county trustee among the county, city and special school districts therein on the basis of the average daily attendance maintained by each, during the current school year."

There is no question in the present case but that Roane County does levy a property tax for school purposes, and that the amount of this tax is being shared, on an average daily attendance basis, with the school system of the City of Harriman.

The petitioners alleged, however, and for all practical purposes the respondents admitted, that the Quarterly County Court is supplementing the funds used for the operation of county schools with proceeds from the wholesale beer tax and a part of the retail sales tax, for the express and deliberate purpose of keeping the school tax levy as low as possible. Since these special tax receipts are not divided with the city schools, taxpayers and school children residing in the city have been discriminated against, contrary to the provisions of the general education statute set out above.

In the leading case of *State ex rel. Davidson County Board of Education v. Pollard,* 124 Tenn. 127, 136 S.W. 427 (1911), it was expressly held:

" . . . [I]t is beyond the power of county courts of this State to take moneys raised for school purposes and appropriate them for other different purposes, or to take moneys raised for purposes other than school purposes and use them for school purposes." 124 Tenn. at 136, 136 S.W. at 429.

The Court further stated:

"This holding does not mean that that portion of the population of the counties of the State interested especially in the public schools and public school buildings are without remedy. All the law requires

is that each fund be kept separate and used for the purpose for which it was collected. The law is simple in its provisions for the raising of funds to run the schools, and all that is required in that regard is that the particular means provided by statutes be pursued. The slipshod method of using just any fund that might be on hand and available for just any purpose that might arise is not authorized by law and cannot be sanctioned by the courts." *Ibid.*

This holding has been followed in many later cases. In *Maury County v. Whitthorne,* 174 Tenn. 384, 126 S.W.2d 304 (1939), the Court held that a Quarterly County Court has no authority to appropriate general funds for any purposes other than those enumerated in what is now T.C.A. § 5–901 or in some other special statute.

In the case of *Board of Commissioners v. Obion County,* 188 Tenn. 666, 222 S.W.2d 7 (1949), a county had paid a bonus to its county school teachers out of general county funds. Officials of a separate city school system brought suit to obtain an equal amount for city teachers, contending that once general funds had been transferred into the school fund, the city school system was entitled to share on an average daily attendance basis. This Court held that the appropriation made by the Quarterly County Court to the county school teachers was not authorized by statute, and that the illegal nature of the appropriation was not changed by passing the funds into a school account. The Court said:

"The fact that the county court made an unauthorized gift of county funds to the county school teachers, can be no basis for complainants to demand that a court of equity decree a further unauthorized raid on the county treasury for their benefit." 188 Tenn. at 670–671, 222 S.W.2d at 9.

To the same effect is the case of *State ex rel. Baird v. Wilson County,* 212 Tenn. 619,

371 S.W.2d 434 (1963). There a Quarterly County Court had appropriated substantial sums from general county funds and used them for elementary school purposes. Special school districts sought to recover a proportionate amount, but the Court held that the initial appropriations of the general funds to the school funds were illegal and unauthorized. It therefore enjoined future transfers of general funds into the school fund, but denied recovery of funds already diverted, since they had not properly become part of the school fund subject to division between the county and the special school districts. *See also State ex rel. Cope v. Davidson County,* 198 Tenn. 24, 227 S.W.2d 396 (1955), holding unauthorized and illegal a county court appropriation from general funds for "teacher transportation" in the county schools.

■ We believe that these principles are controlling here, and that the courts below erred in holding that the county could lawfully appropriate proceeds of the wholesale beer tax to school purposes, without specific statutory authorization.[2] The judgments are reversed as to this aspect of the case, and the cause is remanded to the Chancery Court with directions to enter a permanent injunction, restraining respondents from further allocating the beer tax proceeds to the annual county school budget. If additional county officials need to be joined for the purposes of such injunction, appropriate amendments to the pleadings and proper process should be allowed. For the reasons stated in the foregoing authorities, however, petitioners are not entitled to share in any previous beer tax proceeds which have been diverted into the county school funds.

### C. *Retail Sales Tax Proceeds*

A different situation is presented as to retail sales tax proceeds. Under T.C.A.

---

2. Nothing in the statutes governing the beer tax authorizes the use of these tax receipts for school purposes. *See* T.C.A. §§ 57–301 et seq.

§ 67–3052(1), the county is directed to expend one-half of its sales tax proceeds for school purposes, and under T.C.A. § 49–605 these are to be divided with the city school system on an average daily attendance basis. Apparently these statutes have been complied with, and no issue has been made as to this one-half of the county retail sales tax receipts.

The governing body of the county, however, is authorized by T.C.A. § 67–3052(2)(a) to allocate the remainder of county sales tax receipts "to such fund or funds of the county" as it shall direct.

In accordance with these provisions the Quarterly County Court of Roane County has allocated the remaining portion of the county's share of retail sales tax proceeds to the school fund, to be used in meeting the annual budget for the county schools. This part of the sales tax proceeds has not been divided with the city school system.

■ We are of the opinion that the contentions of the petitioners that these funds must be shared with the city school system are well taken, and that the courts below were in error in holding otherwise. The provisions of T.C.A. § 49–605 are mandatory. They require that all school funds for current operations and maintenance purposes collected by a county, except those used for pupil transportation, "shall be apportioned by the county trustee among the county, city, and special school districts therein on the basis of the average daily attendance maintained by each, during the current school year."

■ In many well-considered cases since the first general education act was passed in Tennessee in 1925, it has been recognized that public education is essentially a state, rather than a county or municipal, function. The general education statutes contemplate a uniform state-wide system of public education.

In one of the leading cases on the subject, *Board of Education of the Memphis City Schools v. Shelby County,* 207 Tenn. 330,

339 S.W.2d 569 (1960), the general education statutes enacted up to that time were discussed in depth. In that case a private act purporting to authorize a different distribution of funds between the city and county school systems from that provided in what is now T.C.A. § 49–605 was held unconstitutional and potentially disruptive of the uniform system contemplated by the general statutes.

In that case, the Court said:

"The general purpose and plan of the Education Acts passed by the Legislature of Tennessee, beginning with the Act of 1925, referred to hereinabove, was to establish and maintain a *uniform system* of public education in this State, public education being primarily a State function. The philosophy permeating such general uniform plan, as set out in said General Education Acts, in so far as pertinent to the issues in these causes, provides for a division of all county school funds, with the exception of funds for the transportation of pupils attending the public schools, between the County School System and the School systems operated by municipalities or special school districts, such as the City of Memphis and its Board of Education, within the county, on a proportional basis of the average daily attendance of pupils attending the various schools in a county." 207 Tenn. at 345, 339 S.W.2d at 576.

Further, the Court said:

"Education of the youth of each county is the primary purpose of our State Educational System, as reflected throughout all of its General Education Acts, and the apportionment of local school funds under the general law on the basis of average daily attendance of pupils in the various schools gives to every school system its proportional and fair share of said funds, so, in a sense, each pupil may be afforded the same opportunity to obtain an education, regardless of place of residence." 207 Tenn. at 351, 339 S.W.2d at 578.

Respondents rely upon the provisions of T.C.A. § 49–201(2) and (7), dealing with powers of the Quarterly County Court under the education statutes, as follows:

"(2) To consider, on the recommendation of the county board of education, school budgets for the county elementary and county high schools, and to provide necessary funds to enable said county board to meet all obligations under the adopted budgets."

\* \* \* \* \* \*

"(7) To levy such taxes for county elementary and county high schools as may be necessary to meet the budget submitted by the county board of education and adopted by the quarterly county court."

These statutes have been held to permit the governing body of a county to make a special tax levy for the building, repair and equipment of county schools, without division under T.C.A. § 49–605. *See Southern v. Beeler,* 183 Tenn. 272, 282–290, 195 S.W.2d 857 (1946); *State ex rel. Cope v. Davidson County,* 198 Tenn. 24, 29–31, 277 S.W.2d 396 (1955).

Where, however, the county does not make such a special purpose levy, but lawfully appropriates funds to current school operations, as had been done here with the portion of sales taxes at issue, then those funds become subject to the apportionment provisions of the general school statutes. In the *Southern* case, *supra,* the county allotted tax proceeds to the school budget under the guise of a special levy for repair and maintenance. It was held that these funds had to be divided with a city school system. *See* 183 Tenn. at 290–291, 195 S.W.2d 857.

Therefore, while the Quarterly County Court is certainly not obligated to allocate these receipts to a current school budget, when it does do so we are of the opinion that special school districts within the county are entitled to a proportionate part under T.C.A. § 49–605. Accordingly, we are of the opinion that the courts below erred in holding that the second portion of retail sales tax proceeds appropriated by the Quarterly County Court to the annual school budget were not subject to division with the city school system.

In view of the conclusions reached by the Chancellor, he did not comment upon the evidence offered on this subject, including the statistics filed with the answer of the respondents. Neither he nor the Court of Appeals considered whether division should be allowed with respect to any school years prior to the filing of the suit. Neither party has attempted to brief that question. The principal relief which petitioners have sought is a declaratory judgment.

Since the issues are not fully developed, we remand the cause to the Chancery Court for disposition of any further questions concerning the division of these retail sales tax proceeds.

All costs incident to the appeal of this case are taxed to respondents. The Chancellor will fix all other costs.

COOPER, C. J., and FONES, HENRY and BROCK, JJ., concur.