IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2007

## STATE OF TENNESSEE v. EDWARD CHARLES TENNIAL

**Appeal from the Criminal Court for Shelby County**
**No. 04-06229    Paula Skahan, Judge**

_____

**No. W2006-00999-CCA-R3-CD  - Filed October 9, 2007**

_____

Appellant, Edward Charles Tennial, was indicted with two counts of first degree murder, two counts of aggravated burglary and one count of theft over $10,000.  A jury convicted Appellant of two counts of second degree murder, two counts of aggravated trespass and one count of theft over $10,000.  The trial court merged the second degree murder convictions into one and the aggravated trespass convictions into one.  After holding a sentencing hearing, the trial court sentenced Appellant to twenty-one years for the murder conviction as a Range I violent offender, with release eligibility at 100%, three years for the theft over $10,000 as a Range I standard offender with release eligibility of 30%, and eleven months and twenty-nine days for the aggravated trespass in the workhouse.  The trial court ordered all sentences to be served consecutively.  Appellant argues on appeal that the trial court improperly considered the four enhancement factors to his second degree murder sentence.  We conclude that the trial court incorrectly considered two of the four enhancement factors, but the remaining two enhancement factors support the trial court's enhancement of Appellant's sentence.  Therefore, we affirm the judgments of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES, and ALAN E. GLENN, JJ., joined.

Marvin E. Ballin, Memphis, Tennessee, for the appellant, Edward Charles Tennial.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Goodman and Chris West, Assistant District Attorneys General,for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

For a little over a year prior to the date in question, Appellant, who was eighteen years old, had been dating Kristy Callaway, who was sixteen years old. Immediately before the date in question, Ms. Callaway ended her relationship with Appellant. On August 26, 2003, Appellant entered his ex-girlfriend's house through her unlocked bedroom window around 11:00 a.m. He had brought a hammer and screwdriver with him. He intended to either scare Kristy or talk to her about their break-up. He set off an alarm in the house and went to the attic. He stayed there for about thirty minutes. He took off his shirt while he was in the attic because he was hot. After leaving the attic, he wandered around the house. Kristy's mother, the victim, came home. Appellant approached her while she was in the kitchen. Appellant stabbed the victim multiple times with his pocket knife, which had a five-inch long blade. After he stabbed the victim, Appellant grabbed the victim's car keys and took her car. He later abandoned it.

The victim's twelve-year-old son returned home from school and found his mother lying in a pool of blood on the kitchen floor. He called the police. The police found a screwdriver and a hammer in Kristy's room. They also found a shirt in the attic. The shirt was stained with Appellant's blood. The police found no sign of forced entry into the victim's house. Another officer found the victim's car when she responded to an abandoned vehicle call. She ran the tags and discovered that the owner of the vehicle was the victim of a murder. The officer secured the car.

On August 31, 2003, Appellant and his mother came to the homicide division where he turned himself in for the victim's murder. Appellant gave a statement to the police during which he admitted to the murder of the victim, but stated that he had not intended to kill her.

The Shelby County Grand Jury indicted Appellant with two counts of first degree murder, two counts of aggravated burglary, and one count of theft over $10,000. A jury convicted Appellant of two counts of second degree murder, two counts of aggravated trespass, and one count of theft. The trial court merged the murder convictions into one conviction and the aggravated trespass convictions into one conviction.

The trial court sentenced Appellant to twenty-one years for the murder conviction, three years for the theft conviction, and eleven months, twenty-nine days for the aggravated criminal trespass conviction. The trial court determined that Appellant was a violent offender for purposes of his murder conviction and a standard offender for his theft conviction. All sentences were ordered to be served consecutively to each other.

Appellant filed a timely notice of appeal.

**ANALYSIS**

Appellant's sole issue on appeal relating to his conviction for second degree murder is that the trial court erroneously applied enhancement factors to enhance Appellant's sentence from the minimum. We begin our analysis with a brief discussion of recent changes in Tennessee's sentencing statutes. In response to the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee General Assembly amended T.C.A. § 40-35-210 so that all felonies now have a presumptive sentence beginning at the minimum sentence within the sentencing range. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006); *see also* 2005 Tenn. Pub. Act ch. 353, § 18. This amendment became effective on June 7, 2005. The General Assembly also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Acts ch. 353, § 18. In addition, the legislation provides that a criminal defendant who committed a criminal offense on or after July 1, 1982, but is not sentenced until after June 7, 2005, may elect to be sentenced under these provisions by executing a waiver of their *ex post facto* protections. *Id.* In the case *sub judice*, Appellant signed such a waiver and, therefore, the new act applies in our review of his sentencing.

At the outset it should also be noted that the 2005 amendments to our sentencing laws curtailed to some degree the grounds that may form the basis of an appeal of a sentencing decision. *Compare* T.C.A. § 40-35-401 (2003) *with* T.C.A. § 40-35-401 (2006). The amended T.C.A. § 40-35-401(b) (2006) differs on one key point:

> (b) An appeal from a sentence may be on one (1) or more of the following grounds:
> (1) The sentence was not imposed in accordance with this chapter;
> (2) The sentence is excessive under the sentencing considerations set out in §§ 40-35-103 and 40-35-210; or
> (3) The sentence is inconsistent with the purposes of sentencing set out in §§ 40-35-102 and 40-35-103.

Prior to 2005, T.C.A. § 40-35-401(b) (2003) stated, "An appeal from a sentence may be on one (1) or more of the following grounds: (1) The sentence was not imposed in accordance with this chapter; or (2) *The enhancement and mitigating factors were not weighed properly*, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." T.C.A. § 40-35-401(b) (2003) (emphasis added).

We now analyze the amended statute to determine on what grounds a criminal defendant may seek relief from the sentence imposed by the trial court. Generally, when construing a statute, every word within the statute is presumed to "have meaning and purpose and should be given full effect." *State v. Odom*, 928 S.W.2d 18, 29-30 (Tenn. 1996) (quoting *Marsh v. Henderson*, 424 S.W.2d 193, 196 (Tenn. 1968)). This Court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its

intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995); *see also State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Carter v. State*, 952 S.W.2d 417, 419 (Tenn. 1997). Furthermore, this Court should construe a statute so that its component parts are consistent and reasonable, and inconsistent parts should be harmonized, where possible. *Odom*, 928 S.W.2d at 30. When the General Assembly has amended a statute, "[i]t is a proper method to determine what the intention of the Legislature was for us to look at prior acts . . . ." *State v. Davidson County*, 277 S.W.2d 396, 401 (Tenn. 1955). In addition, "[w]hen the legislature makes a change in the language of a statute, we must assume that it was deliberate." *State v. Turner*, 193 S.W.3d 522, 527 (Tenn. 2006).

The fact that the General Assembly deleted the language regarding the weighing of enhancement and mitigating factors demonstrates that the General Assembly intended that a defendant may no longer allege as grounds for relief on appeal that the sentencing court erroneously weighed sentencing enhancement factors.

"When reviewing sentencing issues . . . , the appellate court shall conduct a *de novo* review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). This presumption will be virtually irrebuttable if there is a factual basis for the consideration of the enhancement factor, the enhancement factor considered is not an element of the offense and, in addition, the consideration of the factor is not inconsistent with the purposes of sentencing considerations set out in T.C.A. §§ 40-35-103 and -210.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following *advisory* sentencing guidelines:
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006) (emphasis added). With this background in mind, we turn to the propriety of Appellant's sentences in this case.

At the sentencing hearing, the trial court found that there was ample factual support for the consideration of the following enhancement factors: (5) the defendant treated or allowed the victim in this case to be treated with exceptional cruelty; (6) the personal injuries inflicted upon the victim were particularly great; (9) the defendant possessed or employed a deadly weapon; (10) the defendant had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114. Appellant argues that each of these enhancement factors are elements of second degree murder, therefore, their usage constitutes double enhancement. After a review of the record, we conclude that the trial court incorrectly considered enhancement factors (6) and (10), but correctly considered factors (5) and (9).

In conducting our review of the trial court's sentencing determinations, we must consider the appellant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, any statistical information presented by the administrative office of the courts regarding sentencing practices for similar offenses in the state, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b) (2006).

The trial court considered enhancement factor (6), the personal injuries inflicted upon the victim were particularly great. Appellant correctly argues that this enhancement factor is an element of the offense. The courts of this State have held on several occasions that this enhancement factor is not applicable to offenses where death is an element of the offense because injuries sustained by a homicide victim are by definition "particularly great." *See State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); *State v. Lambert*, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). This analysis has been specifically applied to second degree murder cases. *See State v. Michael Scott Brogan*, No. E2001-00712-CCA-R3-CD, 2002 WL 1723702, at * 5 (Tenn. Crim. App., at Knoxville, July 25, 2002), *perm. app. denied*, (Tenn. Dec. 2, 2002); *State v. Luke B. Cole*, No. W2000-01530-CCA-R3-CD, 2001 WL 912802, at *5 (Tenn. Crim. App., at Jackson, Aug. 10, 2001), *perm. app. denied*, (Tenn. Dec. 31, 2001); *State v. James Henry Davis*, No. M1999-02467-CCA-R3-CD, 2000 WL 1130139, at *3 (Tenn. Crim. App., at Nashville, Aug. 2, 2000)*, perm. app. denied*, (Tenn. Feb. 12, 2001). Clearly, enhancement factor (6) was improperly considered by the trial court because it is an element of the offense and its consideration constitutes double enhancement.

The trial court also considered enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high. This factor is not necessarily inherent to a homicide offense. It has been applied when there have been other individuals present

who were put in danger by the actions of the defendant. *See Williamson*, 919 S.W.2d at 83; *State v. Makoka*, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994); *Lambert*, 741 S.W.2d at 134. However, the victim and Appellant were the only people present at the time of the incident. The only human life at risk was that of the victim, therefore, this enhancement factor is an element of the offense in this particular factual situation, and its consideration would also constitute double enhancement.

Enhancement factor (5), treating the victim with exceptional cruelty, is not considered an element of second degree murder. In *State v. Gray*, 960 S.W.2d 598 (Tenn. Crim. App. 1997), the application of this enhancement factor for a sentence for second degree murder was upheld by this Court. 960 S.W.2d at 611. However, "[i]t is well established that proper application of enhancement factor (5) requires a finding of cruelty under the statute "over and above" what is required to sustain a conviction for an offense. . . . In other words, such evidence must 'denote[ ] the infliction of pain or suffering inflicted as the means of accomplishing the crime charged.'" *State v. Arnett*, 49 S.W.3d 250, 258 (Tenn. 2001) (quoting *State v. Kelly Haynes*, No. W1999-01485-CCA-R3-CD, 2000 WL 298744, at *3 (Tenn. Crim. App., at Jackson, Mar. 14, 2000)).

In the case *sub judice*, Appellant surprised the unarmed victim in her own home. The forensic pathologist, who completed the autopsy on the victim, testified that she identified eleven to twelve stab wounds, but only one of the eleven to twelve wounds would have caused immediate death. One wound was to the chest and pierced the heart which caused internal bleeding, as well as, impeding the heart's ability to pump blood to the rest of the victim's body. Therefore, there were ten to eleven wounds in addition to the one that was the proximate cause of the victim's death. The wounds other than that which caused the victim's death are "over and above" that needed to sustain Appellant's conviction for second degree murder. These facts are sufficient to support the trial court's consideration of enhancement factor (5).

We now turn to the trial court's consideration of enhancement factor (9), the defendant employed a deadly weapon. This Court has held that this enhancement factor is not an element of the offense. *State v. Butler*, 900 S.W.2d 305, 312-13 (Tenn. Crim. App. 1994). In *Butler*, the defendant used a firearm to kill the victim resulting in the defendant's conviction for second degree murder. *Id.* This Court stated that the use of a firearm is not an element of the offense of second degree murder. *Id.* The same is true of the use of a knife. Therefore, the trial court properly considered this enhancement factor when determining Appellant's sentence.

The trial court sentenced Appellant to twenty-one years. The sentencing range for second degree murder, a Class A felony, as a Range I offender is fifteen to twenty-five years. We have concluded that the trial court erroneously considered two of the four enhancement factors when determining Appellant's sentence. However, we conclude that the two properly considered enhancement factors amply support the trial court's imposition of an increase of the minimum sentence by six years to twenty-one.

## **CONCLUSION**

For the foregoing reasons, we affirm judgments of the trial court.


_____
JERRY L. SMITH, JUDGE