# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 27, 2014 Session

## CITY OF ATHENS BOARD OF EDUCATION ET AL. v. McMINN COUNTY, TENNESSEE ET AL.

**Appeal from the Circuit Court for McMinn County**
**No. 2011-CV-331     Lawrence H. Puckett, Judge**

---

**No. 2013-02758-COA-R3-CV-FILED-DECEMBER 29, 2014**

---

This litigation is a dispute between the boards of education of the cities of Athens and Etowah ("the City School Boards") on the one hand and McMinn County ("the County") over the distribution of tax revenues among the various school systems within the county. Tenn. Code Ann. § 49-3-315(a) (2013) mandates that "[a]ll school funds for current operation and maintenance purposes collected by any county . . . shall be apportioned by the county trustee" among the local education agencies in the county based upon average daily school attendance. Over the years spanning from 1996 to 2011, the County apportioned funds in the account designated "general purpose school fund" to the City School Boards, but did not apportion funds from the County's "educational capital projects fund." The County argues that funds appropriated for and spent on school capital projects are not "school funds for current operation and maintenance purposes" under the language of the statute. The trial court agreed and granted the County summary judgment. It dismissed the complaint of the City School Boards. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

H. Chris Trew, Athens, Tennessee, for the appellant, City of Athens Board of Education.

William M. Dender, Etowah, Tennessee, for the appellant, City of Etowah Board of Education.

John E. Owings, Knoxville, Tennessee, and Vance L. Baker, Jr., Athens, Tennessee, for the appellees, McMinn County, Tennessee and Phil Tuggle, County Trustee for McMinn County.

**OPINION**

**I.**

The resolution of this case turns on the interpretation and application of Tenn. Code Ann. § 49-3-315(a), part of the Tennessee Education Finance Act of 1977. Section 49-3-315(a) provides, in pertinent part, as follows:

> For each [local education agency][1] there shall be levied for current operation and maintenance not more than one (1) school tax for all grades included in the LEA. Each LEA shall place in one (1) separate school fund all school revenues for current school operation purposes received from the state, county and other political subdivisions, if any. . . . All school funds *for current operation and maintenance purposes* collected by any county, except the funds raised by any local special student transportation tax levy as authorized in this subsection (a), shall be apportioned by the county trustee among the LEAs in the county on the basis of the [weighted full-time equivalent average daily attendance[2]] maintained by each, during the current school year.

(Emphasis added.) In construing the similarly-worded predecessor to this statute, the Supreme Court noted:

> The provisions of T.C.A. § 49-605 [now 49-3-315] are mandatory. They require that all school funds *for current operations and maintenance purposes* collected by a county, except those used for pupil transportation, "shall be apportioned by the county trustee among the county, city, and special school districts therein on the basis of the average daily attendance maintained by each, during the current school year."

*City of Harriman v. Roane Cnty.*, 553 S.W.2d 904, 908 (Tenn. 1977) (emphasis added).

---

[1] " 'Local education agency' or 'LEA' means any county, city, or special school district, unified school district, school district of any metropolitan form of government or any other school system established by law." Tenn. Code Ann. § 49-3-302(11).

[2] The "WFTEADA."

All of the material facts are undisputed. The budget passed by the McMinn County Commission for fiscal year July 1, 2010 through June 30, 2011, included a proposed revenue item of $7,051,942 designated for and allocated to the general purpose school fund. The County states that this "represents or constitutes the only . . . funds proposed to be collected by the County which . . . constitutes the County Board of Education's apportioned share of school funds from current property taxes pursuant to T.C.A. Section 49-3-315(a)." The budget also included estimated funds in an account designated "other capital projects fund" in the amount of $3,482,190. These funds were not apportioned among the County LEA and the LEAs of the Cities of Athens and Etowah. The County undertook a similar budgeting approach in earlier years, as described by the following undisputed statements taken from the County's Rule 56.03 statement of undisputed material facts in support of its motion for summary judgment:

> The County Commission approves an expenditure budget for each Fund listed in its annual budget. One of those Funds listed is Other Capital Projects Fund #189 which began receiving property tax revenue in FY 96-97.
>
> The State of Tennessee conducted an audit of McMinn County's General Purpose Schools Fund #141's Fund Balance (along with other school systems across the State) and determined that $1,921,581 was derived from the State's Basic Education Program (BEP) funds. Further, the State required that these funds be used for Capital Projects. These funds, along with other funds from the General Purpose School Fund #141 began to be transferred to an Educational Capital projects Fund #177 in FY 99-00.
>
> In FY 00-01, the County Commission began budgeting appropriations for County School Capital Projects for the purpose of renovations and additions to the County Schools. While these budgeted funds have not been completely expended, the following list is the budget year and the amount the County Commission has budgeted:
>
> | | |
> |---|---|
> | FY 00-01 | $ 600,000 |
> | FY 01-02 | 900,000 |
> | FY 02-03 | 1,200,000 |
> | FY 03-04 | 1,200,000 |
> | FY 04-05 | 1,200,000 |

| | |
|---|---|
| FY 05-06 | 1,200,000 |
| FY 06-07 | 1,200,000 |
| FY 07-08 | 1,200,000 |
| FY 08-09 | 1,200,000 |
| FY 09-10 | 1,200,000 |
| | $11,100,000 |

> As Capital Project needs arose and it became necessary to use these funds, McMinn County chose to utilize the Education Capital Projects Fund #177 and transferred funds from Fund #189 in order to make payments for specific capital projects.
>
> Revenue from all property tax fixed in each annual budget of McMinn County has conformed to the levies set forth in each respective budget. The following funds are listed in the annual tax levy resolution and receive a portion of the revenue generated by the property tax rate: General Fund #101; Road & Bridge Fund #131; General Purpose School Fund #141; Athens City School Fund #355; Etowah City School Fund #356; and Other Capital Projects Fund #189.

(Paragraph numbering in original omitted.)

According to undisputed proof submitted by Jason Luallen, the County's Director of Finance, the County spent a total of $11,607,925 from its Education Capital Projects Fund from FY 1999-2000 through FY 2009-2010.

On August 12, 2011, the City School Boards brought this action alleging that the County has "failed, and continue[s] to fail, to apportion and share funds from county[-]wide general property tax collections, which are used . . . for McMinn County Board of Education capital projects, with the Athens City Schools and Etowah City Schools as required by T.C.A. § 49-3-315." After discovery, both sides moved for summary judgment. The trial court granted the County summary judgment:

> Plaintiffs represent two LEAs that, under the Education Finance Act, share in the tax revenue raised by defendant county for operation and maintenance of all the LEAs in McMinn County. Plaintiffs' complaint alleges that McMinn County has unlawfully diverted a portion of the county taxes for education into a special county budget category named "Other Capital

-4-

Projects Fund" which the county does not prorate among all LEAs of the county. Plaintiffs' motion for summary judgment asks the court to rule that the actions of McMinn County government violate the Education Finance Act. Plaintiffs ask the court to order the county to apportion the funds due to them and to award them pre-judgment interest on all amounts wrongfully withheld from them by the county.

Defendants, McMinn County and the County Trustee, do not dispute Plaintiffs' factual allegations. However, Defendants submit that the tax revenue that McMinn County allocates to this special fund is not a tax "for current [school] operation and maintenance purposes" and, therefore, the Education Finance Act does not require the county to distribute the fund in the manner directed by Tenn. Code Ann. § 49-3-315(a), *i.e.*, on a prorated basis to all LEAs in the county based upon average daily attendance.

*       *       *

The court agrees with the [County]. When a county makes a tax assessment for future capital outlay projects, such an assessment is not subject to proration among all LEAs in the county. The Education Finance Act merely requires proration among all LEAs of "[a]ll school funds for current operation and maintenance purposes collected by any county." Tenn. Code Ann. § 49-3-315(a). Funds collected for future capital projects are not for "current operation and maintenance." A county's voluntary "capital contribution to assist in defraying the cost of constructing a public school," likewise is not subject to proration under Tenn. Code. Ann. § 49-3-1003. *See* Op. Tenn. Atty. Gen. 95-015 (March 13, 1995) [1995 WL 115844] and Op. Tenn. Atty. Gen. 03-008 ([Jan.] 23, 2003) [2003 WL 174008].

The City School Boards timely filed a notice of appeal.

II.

The issue presented, as quoted from the City School Boards' brief, is:

[Whether] the trial court erred in granting McMinn County's motion for summary judgment holding that funds collected by McMinn County from county-wide property taxes and provided solely to the county school system do not have to be apportioned pursuant to TCA section 49-3-315(a) if the funds paid to the county school system are for capital projects.

The City School Boards do not allege that funds allocated for capital projects were not actually spent on capital projects. Nor do the City School Boards argue that the County's budgeting and spending process runs afoul of the well-established rule that "it is beyond the power of count[ies] of this State to take moneys raised for school purposes and appropriate them for other different purposes, or to take moneys raised for purposes other than school purposes and use them for school purposes." *City of Harriman*, 553 S.W.2d at 906 (quoting *State ex rel. Davidson Cnty. Bd. of Educ. v. Pollard*, 136 S.W. 427, 429 (Tenn. 1911)). The City School Boards' argument is that Tenn. Code Ann. § 49-3-315 requires a county to apportion among local education agencies in the county *all school funds* collected by the county, regardless of whether a portion of those funds are appropriated and allocated for educational *capital* projects. The County responds by asserting that the plain and express language of Tenn. Code Ann. § 49-3-315(a) requires it to share only "all school funds *for current operation and maintenance purposes* collected" by the County, and that funds properly designated for capital projects are not "for current operation and maintenance purposes." (Emphasis added.)

## III.

As previously noted, both sides moved for summary judgment. The parties agree that the pertinent facts are undisputed and this case presents a question of law that is suitable for summary judgment.

## IV.

The issue presented requires us to construe Tenn. Code Ann. § 49-3-315. The primary rule governing statutory construction requires us to ascertain and give effect to the legislature's intent as expressed in the statute. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007). To determine legislative intent, we first examine the language of the statute itself, *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005), presuming that "every word in a statute has meaning and purpose" and should "be given effect if the obvious intention of the General Assembly is not violated by so doing." *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). In construing a statute, a court must "determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute

without any forced or subtle construction that would extend or limit the statute's meaning." ***State v. Flemming***, 19 S.W.3d 195, 197 (Tenn. 2000). If the language of the statute is clear and unambiguous, "we apply its plain meaning in its normal and accepted use." ***Lanier***, 229 S.W.3d at 661; *see also* ***In re Adoption of A.M.H.***, 215 S.W.3d at 808 ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.").

The statute, Tenn. Code Ann. § 49-3-315(a), requires that "[a]ll school funds for current operation and maintenance purposes collected by any county, except the funds raised by any local special student transportation tax levy as authorized in this subsection (a), shall be apportioned by the county trustee among the LEAs in the county on the basis of the WFTEADA maintained by each, during the current school year." The question is whether funds allocated for school capital projects are included in "school funds for current operation and maintenance." Although Tennessee courts have not decided this exact issue under the current Education Finance Act, the Supreme Court has addressed this issue under earlier, and similar, statutory language pertaining to school funding. In each of its opinions, the High Court has noted a clear distinction between funds for current operation and maintenance and funds for capital projects.

In ***Southern v. Beeler***, 195 S.W.2d 857, 865 (Tenn. 1946), the Court addressed the issue of whether the trial court erred in holding that a tax levy by Knox County "for the building, repair, and equipment of rural schools created a fund subject to division with the City of Knoxville on the basis of average daily attendance in schools." The ***Southern*** Court stated:

> The repair of school buildings and their equipment is an important item of expense in any educational program. School buildings must be kept in a reasonable state of repair and cannot be made dependent upon average daily attendance of students. Now in the instant case the quarterly court levied a special tax for this purpose, that is, to repair and equip rural schools. We think the learned chancellor was in error in holding that the fund raised from this special tax should be regarded as a part of elementary school funds and subject to division with the City of Knoxville based upon the average daily attendance.
>
> An elementary school fund that is subject to division between the county and city is raised from the special tax of 69 cents, as provided for in the foregoing itemized budget. It is subject to distribution as provided by Code section 2348(5) . . .

The quarterly county court cannot lawfully levy a special tax for the repair and maintenance, or the erection, of rural schools and use it for some other purpose and thereby avoid the division with the city as provided by the foregoing section of the Code. It must be kept separate and apart from all other school funds. We hold therefore the foregoing section of the Code does not apply to a fund raised from a special tax for the repair and upkeep of rural school buildings in the county.

*Id.*

Nine years later, the Supreme Court again decided a dispute between county and city school systems over sharing funds allocated for school building and repair in *State ex rel. Cope v. Davidson Cnty.*, 277 S.W.2d 396 (Tenn. 1955), stating the following:

Section 13, Code 2417.188, reads as follows:

Section 13. Be it further enacted, That each and every non-equalizing county in this State shall levy not more than *one tax for current school operating purposes* for all grades, one through twelve (or such of these grades as may be included in the local school program), and the County Trustee shall place in *one fund*, separate and apart from all other funds coming into his hands, *all current school revenues received* from County and State sources *for school purposes*, and all local school funds raised or collected by any county participating in State school funds *shall be apportioned by the County Trustee to the county, cities, and special school* districts therein, on the basis of the average daily attendance maintained by each in grades one through twelve during the preceding school year.

\*       \*       \*

The tax resolution of the County Court among other things contained:

Public School Fund * * * 1.23 (7¢ of the levy for Public School Fund of $1.23 shall be allocated and placed to the credit of Rural School Building and Repair Fund and used exclusively for that purpose.)

This appropriation of the 7¢ for rural school building and repair fund was attacked in the [complaint] of the City. If the 7¢ levy is taken from the $1.23 there would only be left $1.16 in which the complainant would share because these cities in the non-equalizing counties do not share in special appropriations for school buildings and repair. The Chancellor held against the [complaint] on this question and with the County that this 7¢ levy as shown in the quotation above "was to be used for current school operating purposes, and that the said 7¢ was treated and considered as a separate levy for 'rural school buildings and repair fund' * * * It follows that the Court has reached the conclusion that the City is not entitled to any pro rata of the said 7¢ levy."

*        *        *

This Court in considering the question in *Southern v. Beeler*, *supra*, concluded that *the expense of repairing school buildings* should not be made to depend upon the average daily attendance of students, and *was not intended to be considered a part of the "operating expenses of the school*," which were and are by legislative enactment . . . required to be divided . . . between the county and the city located therein.

*Id.* at 397-99 (italics in Section 13, Code 2417.188 quote taken from original; emphasis in last paragraph added by us).

As can be seen, the two above-cited decisions stand for the proposition that a county may levy a special tax designated for a capital projects fund such as "for the building, repair, and equipment of rural schools," *Southern*, 195 S.W.2d at 865, or a "Rural School Building and Repair Fund," *State ex rel. Cope*, 277 S.W.2d at 398, without being required to allocate part of the funds to city school systems within the county. The Supreme Court reaffirmed this view in *City of Harriman* the same year the Tennessee Finance Act of 1977 was passed, stating as follows in pertinent part:

-9-

Respondents rely upon the provisions of T.C.A. § 49-201(2) and (7), dealing with powers of the Quarterly County Court under the education statutes, as follows:

> (2) To consider, on the recommendation of the county board of education, school budgets for the county elementary and county high schools, and to provide necessary funds to enable said county board to meet all obligations under the adopted budgets.
>
> *       *       *
>
> (7) To levy such taxes for county elementary and county high schools as may be necessary to meet the budget submitted by the county board of education and adopted by the quarterly county court.

> These statutes have been held to permit the governing body of a county to make a special tax levy *for the building, repair and equipment of county schools, without division* under T.C.A. § 49-605. *See Southern v. Beeler*, 183 Tenn. 272, 282-290, 195 S.W.2d 857 (1946); *State ex rel. Cope v. Davidson County*, 198 Tenn. 24, 29-31, 277 S.W.2d 396 (1955).

> Where, however, the county does not make such a special purpose levy, but lawfully appropriates funds to current school operations, as had been done here with the portion of sales taxes at issue, then those funds become subject to the apportionment provisions of the general school statutes. In the *Southern* case, *supra*, the county allotted tax proceeds to the school budget under the guise of a special levy for repair and maintenance. It was held that these funds had to be divided with a city school system. *See* 183 Tenn. at 290-291, 195 S.W.2d 857.

553 S.W.2d at 909. The Office of the Attorney General has reached a similar conclusion, opining as follows:

> [P]roceeds from the sale of a county gas system which the

-10-

county received from a utility district would fall within the category of "revenues . . . received from the state, county and other political subdivisions" under [Tenn. Code Ann. § 49-3-315(a)]. Therefore, if the county uses these proceeds to fund current operation and maintenance of its school system, it must place them in the school fund and divide them with other systems operating in the county in accordance with T.C.A. § 49-3-315(a). However, . . . you indicate that the county wishes to use the funds to help build a high school. So long as the funds are used for this purpose, rather than for "current operation and maintenance purposes" we do not think the funds need to be placed in the special school fund and divided with other school systems within the county under the statute.

Tenn. Op. Atty. Gen. No. 95-015, 1995 WL 115844 at *3.

In the present case, McMinn County has in essence done what the Supreme Court validated and allowed in **Southern** and **State ex rel. Cope**: set aside money in its budget, effectively as a "savings account," for future capital projects as needed. The monies in the County's Educational Capital Projects Fund, and its earlier Other Capital Projects Fund, were not used for "current operation and maintenance purposes." The Education Finance Act, by its language, does not require apportionment of funds that are not designated for current operation and maintenance purposes. For us to accept the City School Boards' position that the statute requires apportionment of *all* school funds collected by the County, we would have to effectively rewrite Tenn. Code Ann. § 49-3-315(a) so as to elide the words "for current operation and maintenance purposes." Obviously, this is something that we are not at liberty to do.

The City School Boards point out that under the Education Finance Act, if the County had raised money for capital projects by issuing and selling school bonds, it would have been required to apportion the funds raised from selling the bonds. Tenn. Code Ann. § 49-3-1002 authorizes a county to issue and sell "general obligation school bonds." Tenn. Code Ann. § 49-3-1003(b)(1) requires counties to share the funds raised from selling the bonds with city school systems as follows:

In counties having a city or cities operating schools independent of the county, the trustee of the county shall pay over to the treasurer of the city that amount of the funds that bear the same ratio to the entire amount arising from this part as the average daily attendance of the year ending June 30 next preceding the

sale of the bonds of the city or cities bears to the entire average daily attendance of the year ending June 30 next preceding the sale of the bonds of the county; provided, that the funds paid over to the city treasurer shall be kept separate from all other funds in the manner and for the purposes provided in this part for the county funds to be used.

Tenn. Code Ann. § 49-3-1004(a) provides that the funds from general obligation school bonds shall be spent as follows:

> The proceeds from the sale of school bonds issued under § 49-3-1002 constitute a special fund to be known as the special school fund, except funds for aiding this state in the construction of state education facilities or institutions as provided for in subsection (b), which shall be kept by the trustees of such county and the treasurer of the city schools separate and apart from all other funds and shall be applied exclusively to purchase property for school purposes, to purchase sites for school buildings, to erect or repair school buildings, to furnish and equip school buildings and to refund, call or make principal and interest payments on bonds or other obligations previously issued for the same purposes, and to be used for no other purposes by the county board of education of the county, the city board of education or the governing board of the city.

The City School Boards acknowledge that Tenn. Code Ann. §§ 49-3-1002 through -1004 do not apply in this case, but argue that "[i]t is inconceivable or an absurdity to believe that the General Assembly, when enacting the Tennessee Education Finance Act of 1977, intended that a city school system share based upon average daily attendance in funds derived from a bond issue for capital improvements, but not receive its fair share of school funds derived from City Schools property taxes if the funds from City Schools property taxes are designated for capital improvements within the county school system." However compelling this argument may be, it is properly directed to others, *e.g.*, the General Assembly, not to this Court. The statutory scheme as currently written is clear and unambiguous, and it does not require apportionment under the circumstances presented. Since we must apply Tenn. Code Ann. § 49-3-315 as written, we reject the City School Boards' invitation to take a different approach.

V.

The trial court's summary judgment in favor of McMinn County is affirmed. Costs on appeal are assessed to the appellants, City of Athens Board of Education and City of Etowah Board of Education. The case is remanded to the trial court for collection of costs below, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE